KEITH M. KANESHIRO   2027
Prosecuting Attorney
JANICE T. FUTA   1765
Chief, Felony Trials Division
ELENA KAUʻI YAMANE   9414
Deputy Prosecuting Attorney
City and County of Honolulu
1060 Richards Street
Honolulu, Hawaiʻi  96813
Telephone:  (808) 768-7495
Fax No.:  (808) 768-6436
Email:  eyamane@honolulu.gov

Attorneys for State of Hawaiʻi

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| STATE OF HAWAIʻI, | ) | CR. 13-00415 HG |
| | ) | (Circuit Court No. 13-1-0387) |
| Plaintiff, | ) | |
| | ) | STATE OF HAWAIʻI'S |
| vs. | ) | MEMORANDUM IN OPPOSITION |
| | ) | TO DEFENDANT'S NOTICE OF |
| CHARLES ERIC BROUGHTON, | ) | REMOVAL OF STATE |
| Also known as Eric Broughton, | ) | PROSECUTION; EXHITS "A" and |
| | ) | "B"; CERTIFICATE OF SERVICE |
| Defendent. | ) | |
| | ) | |

**STATE OF HAWAIʻI'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S NOTICE OF REMOVAL OF STATE PROSECUTION**

**APPENDICES "A" through "B"**

and

**CERTIFICATE OF SERVICE**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| STATE OF HAWAIʻI, | ) CR. 13-00415 HG |
| | ) (Circuit Court No. 13-1-0387) |
| Plaintiff, | ) |
| | ) STATE OF HAWAIʻI'S |
| vs. | ) MEMORANDUM IN OPPOSITION |
| | ) TO DEFENDANT'S NOTICE OF |
| CHARLES ERIC BROUGHTON, | ) REMOVAL OF STATE |
| Also known as Eric Broughton, | ) PROSECUTION; EXHIBITS "A" |
| | ) through "B"; CERTIFICATE OF |
| Defendent. | ) SERVICE |
| | ) |

### STATE OF HAWAIʻI'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S NOTICE OF REMOVAL OF STATE PROSECUTION

The State of Hawai'i, by and through its undersigned counsel ("State"), respectfully opposes Charles Eric Broughton's ("Defendant") Notice of Removal of State Prosecution based on Defendant's failure to carry his burden under 28 U.S.C. § 1442(a)(1), which requires Defendant to show: (1) that the instant offense initiated in the Circuit Court of the First Circuit, State of Hawai'i was committed by the Defendant while he was acting under color of his office as a Federal Protective Service ("FPS") officer; and (2) a colorable federal defense.

### I.

### RELEVANT PROCEDURAL BACKGROUND

On March 19, 2013, the Grand Jury in the Circuit Court of the First Circuit, State of Hawai'i returned a true bill and the State of Hawai'i ("the State") filed an

indictment charging Defendant with committing the offense of Terroristic Threatening in the First Degree, in violation of Hawai'i Revised Statutes (HRS) § 707-716(1)(e). *See* Exhibit A. The indictment alleges as follows:

> On or about the 20th day of December, 2012, in the City and County of Honolulu, State of Hawai'i, CHARLES ERIC BROUGHTON, also known as Eric Broughton, threatened Mario Ybarra, by word or conduct, to cause bodily injury to Mario Ybarra, with the use of a dangerous instrument, to wit, an instrument that falls within the scope of Section 706-660.1 of the Hawai'i Revised Statutes, with the intent to terrorize, or in reckless disregard of the risk of terrorizing Mario Ybarra, thereby committing the offense of Terroristic Threatening in the First Degree, in violation of Section 707-716(1)(e) of the Hawai'i Revised Statutes.

On March 28, 2013, Defendant appeared in the Circuit Court of the First Circuit, State of Hawai'i for arraignment on the charge and pled not guilty. On April 19, 2013, Defendant filed a Notice of Removal of State Prosecution ("Notice of Removal"). *See* Exhibit B. Defendant's Notice of Removal was based on 28 U.S.C. § 1442(a)(1).

## II.

## FACTUAL BACKGROUND

On December 20, 2012, at approximately 3:15 p.m., Mario Ybarra ("Ybarra") drove northbound on H2 Veterans Memorial Freeway ("H2 Freeway") in a BMW convertible with his wife Wendy Ybarra ("Wendy"). They traveled behind a white Chevy Tahoe sports utility vehicle ("SUV") in the far left lane which was the high occupancy vehicle ("HOV") lane. The white SUV was driven

by Defendant and traveling at a speed of approximately sixty to sixty-five miles per hour.  The white SUV suddenly slowed to approximately fifty miles an hour.  As the white SUV slowed by braking, Ybarra also slowed by braking.  At the same time, a black truck behind Ybarra's BMW began flashing its lights.  Ybarra activated his turn signal intending to change from the far left HOV lane to the next lane to the right.  The black truck similarly activated its signal to change lanes.  As Ybarra proceeded to change lanes, the white SUV activated its roof-top emergency light bar.  Both the black truck and Ybarra responded to the flashing of emergency lights by remaining in the far left HOV lane.

The white SUV took the Mililani Mauka exit off of the H2 Freeway.  As Defendant's white SUV exited the freeway, Ybarra was able to see that the side of the white SUV was labeled U.S. Department of Homeland Security.  Defendant's white SUV did not have any U.S. Department of Homeland Security decals on the rear of the vehicle.  Ybarra continued northbound on H2 Freeway and exited the H2 Freeway at the Mililani Tech Park exit.

Moments later, Wendy noticed that the Defendant's white SUV approached their BMW from behind.  Defendant's white SUV pulled next to Ybarra's BMW on Kamehameha Highway and Defendant motioned for Wendy to roll down her window.  After Wendy rolled the window down, Defendant yelled: "hey you got a fucking problem with me?"  At this point, Wendy and Ybarra observed Defendant

in his U.S. Department of Homeland Security uniform.  Wendy replied "no" to the Defendant.  Defendant proceeded to ask Wendy "you need to say something to me?"  Again, Wendy replied "no."  Defendant continued to ask Wendy "is there something you need me to do?"  Wendy responded "no, just leave us alone."  Defendant, however, continued to follow Ybarra's BMW.

   At a stop light on Kamehameha Highway, Ybarra stopped his vehicle to obtain Defendant's name and badge number.  Ybarra walked to Defendant's white SUV and asked for his name and badge number.  When Ybarra approached Defendant's window, Defendant had his gun displayed on the center part of the steering wheel.  Not noticing Defendant's gun, Ybarra asked for Defendant's name and badge number.  Defendant then tapped his gun on the steering wheel, drawing Ybarra's attention to the gun.  Ybarra put both hands in the air and told Defendant he was required to provide the requested information.  Defendant then stuck his gun in the center of Ybarra's chest and asked if they had a problem.  Ybarra responded that there was no problem and returned to his BMW with his hands still in the air.  After this incident, Ybarra called 911 to report the incident to Honolulu Police Department.

## III.

## ARGUMENT

### A.   The Instant Case Falls Outside 28 U.S.C § 1442(a)(1) Because Defendant Fails To Raise A Colorable Federal Defense

28 U.S.C. § 1442(a)(1) permits the removal of a criminal proceeding in state court against:

> any officer . . . of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

To remove a case pursuant to 28 U.S.C. § 1442(a)(1), a criminal defendant must: (1) establish his status as a federal agent; and (2) raise a colorable federal defense. *See Mesa v. California*, 489 U.S. 121, 136 (1989) ("The removal statute itself merely serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged."); *aff'g* 813 F.2d 960 (9th Cir. 1987). Defendant bears the burden to establish his compliance with a removal statute. *See Blow v. Liberty Travel, Inc.*, 550 F.Supp. 375 (E.D. Pa. 1982).

In this case, Defendant relies on many federal *civil* cases, such as *Willingham v. Morgan*, 395 U.S. 402 (1969), for general propositions of law. However, in *Mesa*, 489 U.S. at 133, the Court expressly held that "the liberal

5

pleadings sufficient to allege an official immunity defense which [it] permitted in *Willingham* are *inapplicable* to removal of the prosecutions before [it] today." (emphasis added). This is so because, in a criminal case, the State has a "compelling . . . interest in conducting criminal trials in the state courts." *Willingham*, 395 U.S. at 409, n.4 ("Were this a criminal case, a more detailed showing might be necessary because of the more compelling state interest in conducting criminal trials in the state courts.").

"[I]t is axiomatic that the right of the states, consistently with the Constitution and laws of the United States, to make and enforce their own laws is equal to the right of the federal government to exert exclusive and supreme power in the field that by virtue of the Constitution belongs to it." *Colorado v. Symes*, 286 U.S. 510, 518 (1932). Indeed, "a polity's ability to protect its citizens from violence and other breaches of the peace through enforcement of criminal laws is the centermost pillar of sovereignty." *Mesa*, 813 F.3d at 966. "Because the regulation of crime is pre-eminently a matter for the States, [the United States Supreme Court] ha[s] identified a *strong judicial policy* against federal interference with state criminal proceedings." *Mesa*, 489 U.S. at 138 (emphasis added). To this end: "[i]t is hardly consistent with this 'strong judicial policy' to permit removal of state criminal prosecutions of federal officers and thereby impose potentially extraordinary burdens on the States when *absolutely no federal*

6

*question is even at issue in such prosecutions.*" *Id.* (emphasis added). As the Ninth Circuit aptly observed:

> Practical considerations militate against construing the removal statute as broadly as the district court did here. *Congress could not have intended 28 U.S.C. 1442(a)(1) to turn the federal courts into a special traffic court for federal employees.* Whatever remote federal interests are implicated by state traffic regulation of postal vehicles, the overcrowded district courts do not need a new category of pesky cases *turning solely on state law*.

*Mesa*, 813 F.3d at 967 (emphases added); *see Mesa*, 489 U.S. at 138.

The situation presented in the instant case is distinguishable from the criminal cases cited by Defendant in his Notice of Removal at pages 17 to 18, *see* Exhibit B, because none of these cases interpreted the language of the removal statute that is at issue here. *Arizona v. Manypenny*, 451 U.S. 232, 239 (1981), is distinguishable because the issue there was appellate jurisdiction under the federal removal statute, which is not at issue here. *United States v. Todd*, 245 F.3d 691 (8th Cir. 2001) is distinguishable because it involved facts that were unique to its case, and which are absent here. In *Todd*, the defendant was prosecuted in federal court by the United States government and not by any state. *Todd*, 245 F.3d at 692. Unlike the instant case, the prosecution in *Todd* did not originate in state court. *See id.* Instead the defendant filed a lawsuit in state court to compel the state police to release certain files in its possession pursuant to a state freedom of

7

information act. *See id.* The government removed *Todd*'s state lawsuit to federal court, and it was that removal that was the subject of the appeal. *See id.*

*Mesa* is more relevant to Defendant's case than the cases cited in his Notice of Removal. In *Mesa*, two U.S. postal service employees were prosecuted in state court for state traffic violations committed *while on duty* and driving their mail trucks. *Mesa*, 489 U.S. at 123. The *Mesa* defendants filed a notice to remove the case to federal court under 28 U.S.C. § 1442(a)(1). *Id.* The Ninth Circuit characterized the issue as whether "a federal postal employee [can] remove his state criminal prosecution to federal court *when no issue of federal law will arise at trial* and when the only federal component of the case is that he was on duty when the relevant acts allegedly occurred[.]" *Mesa*, 813 F.2d at 961. The Ninth Circuit held that "a federal officer's acts performed while on duty are not automatically done 'under color of [federal] office.'" *Id.* at 967 (quoting 28 U.S.C. § 1442(a)(1)). The Ninth Circuit held that *Mesa* defendants could not remove the state prosecutions to federal court when they raised no colorable claim of federal immunity or other federal defense. *Mesa*, 813 F.2d at 967. The United States Supreme Court agreed when it held that "[f]ederal officer removal under 28 U.S.C. 1442(a) must be predicated upon averment of a federal defense." *Mesa*, 489 U.S. at 139.

8

Defendant argues that he will rely on the federal Supremacy Clause immunity defense.  *See* Exhibit B, Notice of Removal at 20.  Based on this authority, Defendant claims that he "had an honest belief that the conduct on which the criminal charges in this case are based was necessary to the performance of his law enforcement duties and that the actions he took were reasonable under the circumstances as they appeared to him."  Exhibit B, Notice of Removal at 21.

Under the Supremacy Clause, a federal officer is immune from state prosecution when the officer's acts are both (1) authorized by the laws of the United States and (2) necessary and proper to the execution of his responsibilities.  *Morgan v. California*, 743 F.2d 728, 733 (9th Cir. 1984).

"However, merely reciting the magic words 'necessary and proper' will not satisfy *Mesa*'s jurisdictional requirement if the underlying facts averred, or indeed existing on the whole record before the court, do not make out a colorable federal defense."  *North Carolina v. Ivory*, 906 F.2d 999, 1002 (4th Cir. 1990).

The facts in Defendant's Notice of Removal do not raise a colorable claim of federal immunity or any other federal defense, but rather raise an issue of witness credibility.  Defendant's Notice of Removal represents that the conduct forming the basis of the State of Hawai'i's Terroristic Threatening in the First Degree charge *never* occurred.  In other words, there is no federal question at issue in this State of Hawai'i prosecution because Defendant denies the existence of the very

9

facts that his reliance on the Supremacy Clause is based on. "While this assertion may well serve as a defense to the state prosecution, it does not establish the basis of a claim of federal immunity." *See Ivory*, 906 F.2d at 1002 (holding that the defendant had not alleged a defense of federal immunity because he had not alleged anything in the conduct of his federal responsibilities which justified his violation of local traffic laws). As such, Defendant's reliance on the Supremacy Clause does not constitute a "*colorable* federal defense" in light of the factual representations that he made in his Notice of Removal.

The facts that constitute the State of Hawai'i's Terroristic Threatening in the First Degree charge are that Broughton pointed his gun at Ybarra's chest and asked if they had a problem. Defendant flatly denies Ybarra's version of what occurred. Defendant's defense, which he repeatedly asserts in his Notice of Removal, is that Ybarra's report of what occurred *never happened* because, according to Defendant he *never* raised his weapon and certainly did not point it at any part of Ybarra's body. *See* Exhibit B, Notice of Removal at 12. According to Defendant's version of what happened, he simply removed his service weapon from his holster and placed it on his lap, fearing that Ybarra may have been armed. He then returned the weapon to its holster once he determined that Ybarra was unarmed.

Again, Defendant fails to establish how the conduct charged was necessary and proper under his federal duties to give rise to a colorable federal defense

10

because he denies altogether that the alleged conduct occurred. Hence, since Defendant did not assert that the charged act was justified under the federal laws authorizing his duties, the issue of official capacity cannot be in dispute. Instead, what Defendant disputes is Ybarra's credibility.

Additionally, Defendant does not cite or identify any authority where the Supremacy Clause is implicated by the defense of witness credibility. Defendant does not defend his allegedly criminal conduct by relying on federal law or a federal defense. To allow a removal based on Defendant's denial of the State's allegations and a defense of witness credibility would eliminate the colorable federal defense factor needed for removal. Even assuming *arguendo*, that Defendant is asserting a federal defense to the charged conduct under 28 U.S.C. § 1442(a)(1), Defendant's asserted federal defense is not removable because he fails to establish that he was acting "under color of office" as a FPS officer. *See infra*.

> **B. The Instant Case Falls Outside 28 U.S.C § 1442(a)(1) Because Defendant Was Not Acting Under Color Of His Office As A FPS Officer**

To remove a case to federal court the defendant must establish that the suit is "for a[n] act under color of office," *See* 28 U.S.C. § 1442(a)(3). To satisfy this requirement, the defendant must establish that there is a "causal connection between what the officer has done under asserted official authority" and the action against him. *Maryland v. Soper,* 270 U.S. 9, 33, 46 S.Ct. 185, 190, 70 L.Ed. 449

11

(1926) (interpreting predecessor statute); *see also Willingham,* 395 U.S. at 409, 89 S.Ct. at 1817.

Section 1315, Chapter 40 of the United States Code enumerates the duties and powers of Federal Protective Service officers:

> (a) In general. To the extent provided for by transfers made pursuant to the Homeland Security Act of 2002, the Secretary of Homeland Security (in this section referred to as the "Secretary") shall protect the buildings, grounds, and property that are owned, occupied, or secured by the Federal Government (including any agency, instrumentality, or wholly owned or mixed-ownership corporation thereof) and the persons on the property.
>
> (b) Officers and agents.
>
> (1) Designation. The Secretary may designate employees of the Department of Homeland Security, including employees transferred to the Department from the Office of the Federal Protective Service of the General Services Administration pursuant to the Homeland Security Act of 2002, as officers and agents for duty in connection with the protection of property owned or occupied by the Federal Government and persons on the property, including duty in areas outside the property to the extent necessary to protect the property and persons on the property.
>
> (2) Powers. While engaged in the performance of official duties, an officer or agent designated under this subsection may—
>
> (A) enforce Federal laws and regulations for the protection of persons and property;
>
> (B) carry firearms;
>
> (C) make arrests without a warrant for any offense against the United States committed in the presence of the officer or agent or for any felony cognizable under the laws of the United States if the officer or

agent has reasonable grounds to believe that the person to be arrested has committed or is committing a felony;

(D) serve warrants and subpoenas issued under the authority of the United States;

(E) conduct investigations, on and off the property in question, of offenses that may have been committed against property owned or occupied by the Federal Government or persons on the property; and

(F) carry out such other activities for the promotion of homeland security as the Secretary may prescribe.

40 U.S.C. § 1315.

Contrary to Defendant's reading of *United States v. Evans*, 581 F.3d 333 (6th Cir. 2009), a FPS officer's authority and official duties off federal property is limited. *Contra* Exhibit B, Notice of Removal at 14. The Sixth Circuit in *Evans* relied on 40 U.S.C. § 1315(b)(1) and 40 U.S.C. § 1315(b)(2)(e) in the determination that two FPS officers were performing official duties when conducting an investigation that began on federal property at Social Security Administration ("SSA") office. *Evans*, 581 F.3d 333 (6th Cir. 2009). The Sixth Circuit determined that the FPS officers' continued investigation off of the federal property was necessary to protect the federal property and persons on the federal property. *See Evans*, 581 F.3d at 338, 341. Specifically, the Sixth Circuit "conclude[d] that [the] [o]fficers [] reasonably exercised their investigative and protective authority pursuant to 40 U.S.C. § 1315 when *they left federal property* to surveil [defendant's] vehicle." *Evans*, 581 F.3d at 340 (emphasis added).

Further, the Sixth Circuit found "[i]n monitoring what they reasonably believed to be an *ongoing threat* to the orderly functioning of the SSA office, the FPS officers were operating within the protective and investigative roles prescribed by the statute." *Evans*, 581 F.3d at 341 (emphasis added).

The scope of authority of a FPS officer's official duty and accompanying law enforcement authority is set forth in 40 U.S.C. § 1315. Pursuant to the statute and interpreting federal case law, the scope of a FPS officer's official duty and authority is confined to what is necessary to protect federal property or persons on the property. *See United States v. Baldwin*, 2013 WL 1751888 (D. Colo. 2013) (affirming defendant's conviction for three petty offenses arising out of traffic stop by a FPS officer that occurred on federal property); *United States v. Farkash*, 952 F. Supp. 696 (D. Colo. 1996) (affirming defendant's conviction for threatening a FPS officer under 18 U.S.C. § 111(a) for an incident originating on federal property and finding that FPS officer did not lose his status as a federal officer because his duties required him to follow the defendant off of federal property).

Defendant reads "under color of office" as allowing removal for all acts committed while on duty or "in service." The courts have repeatedly held that something more than being on duty is required to establish action under color of office for removal to federal court. *See Mesa*, 813 F.2d at 967 (holding that "a federal officer's acts performed while on duty are not automatically done 'under

14

color of [federal] office"'), *aff'd*, *Mesa*, 489 U.S. 121(1989); *Com. of Virginia v. Harvey*, 571 F.Supp. 464 (E.D. Va. 1983) (holding that the case was not removable to federal court for a military officer's state prosecution for involuntary manslaughter arising from an automobile accident while traveling under orders from one duty post to another to another on grounds that the officer was acting under color of office); *Galbert v. Shively*, 186 F.Supp. 150 (W.D. Ark. 1960) (remanding the case to state court because a Veterans' Administration officer driving a vehicle owned by the United States to a place where he expected to perform some act under the color of his office did not authorize the removal because the mere performance of duty to drive from one place of business to another place of business was not an act done under the color of office); *Oklahoma v. Willingham*, 143 F. Supp 445 (E.D.C. Okla. 1956) (granting remand to state court for prosecution involving a mail carrier with a state traffic law violation because there was no official connection between the act complained of and the official duties of the mail carried and mere fact that the mail carrier was on duty and delivering mail did not present any federal question or defense under federal law).

  Additionally, a FPS officer's official duties off of federal property and authority to engage in investigations are limited by FPS agency policy.  In *United States v. House*, 684 F.3d 1173 (11th Cir. 2012), the Eleventh Circuit affirmed in

15

part convictions of a defendant FPS officer for unreasonable seizure by a law enforcement officer and making false statements originating from eight unlawful traffic stops.  At trial, several current and former officers of FPS testified about the limitations imposed upon their authority by agency policy.  *House*, 684 F.3d at 1185.  The FPS officers testified that agency policy prohibited officers from conducting traffic stops for minor traffic violations outside federal property.  *House*, 684 F.3d at 1185.  Specifically, the FPS officers testified that agency policy "prohibited officers from activating the emergency lights on their vehicles outside federal property, except in response to a life-threatening emergency, while in hot pursuit of a felon, or with prior approval from a [FPS] Mega Center Operator or supervisor.  *Id.*  A FPS Regional Director also testified that he specifically instructed the defendant FPS officer that even in situations where he "believed he was the target of road rage by other drivers, *agency policy required* him to allow local authorities to resolve the matter."  *House*, 684 F.3d 1186 (emphasis added).

In this case, Defendant asserts that the "circumstances conclusively demonstrate" he is being prosecuted for actions taken under color of office.  *See* Exhibit B, Notice of Removal at 19.   As the removal is Defendant's burden, more is necessary to meet the requirement of "color or office" and the related causal connection test.  *See Ivory*, 906 F.2d at 1001, n.4 (noting that simply reciting the

16

"color of office" language in a removal petition is insufficient to raise a colorable federal defense).

Defendant fails to establish that there is a causal connection between the acts complained of and Defendant's official duties as a FPS officer. There is nothing in Defendant's FPS officer official duties that permits him to investigate ordinary citizens for an incident that is unrelated to any of Defendant's powers set forth under 40 U.S.C. § 1315. Unlike the FPS officers in *Evans*, *Baldwin,* and *Farkash*, Defendant was not engaged in an investigation that originated on federal property that was necessary to protect federal property or persons on federal property. By Defendant's own admission he was investigating a "*potential* Section 111 violation against him *personally*." See Exhibit B, Notice of Removal at 14 (emphasis added).

Defendant claims that his actions were performed within the scope of his employment as a FPS officer because of the power to arrest without a warrant for misdemeanors committed in his presence and felonies based on probable cause pursuant to 41 U.S.C. § 1315(b)(2)(c). Exhibit B, Notice of Removal at 13. Defendant claims that during his home-to-work commute he is considered "in service." Exhibit B, Notice of Removal at 15. Defendant further claims to have observed a violation of 18 U.S.C. § 111(b)'s prohibition against assaulting, intimidating or interfering with a federal officer. Exhibit B, Notice of Removal at

17

13.  Defendant claims that "Ybarra was *technically* in violation of 18 U.S.C. § 111 once he began displaying aggressive behavior toward Broughton, and was subject to arrest by Broughton…" Exhibit B, Notice of Removal at 16 (emphasis added).  Defendant claims that he was "in a law enforcement status as soon as he began to respond to Ybarra's aggressive behavior, bringing him clearly into the scope of his employment."  Exhibit B, Notice of Removal at 16.

    However, Defendant fails to show any causal connection between his official authority and the charged conduct in the present prosecution, i.e. pointing a gun at Ybarra's chest.  Although Defendant claims that he was "in service" and authorized to arrest Ybarra for the alleged violation of 18 U.S.C. § 111, the enumerated powers under 40 U.S.C. § 1315, *Evans*, *House*, and *Farkash* make it clear that Defendant's official federal duties do not require him to activate his emergency lights, investigate Ybarra for an incident that did not originate on federal property, or point a gun at Ybarra's chest.  Hence, the removal to federal court should be denied because Defendant has failed to establish a connection between the factual basis of the State's charge against him and his duties as a federal officer.

Accordingly, for all of the foregoing reasons, the State respectfully requests that this Honorable Court deny Defendant's Notice of Removal.

Dated at Honolulu, Hawai'i:  May 10, 2013.

>Respectfully submitted,
>
>Plaintiff State of Hawai'i
>
>By KEITH M. KANESHIRO
>   Prosecuting Attorney
>
>By /s/ JANICE T. FUTA
>   JANICE T. FUTA
>   ELENA KAU'I YAMANE
>   Deputy Prosecuting Attorneys
>   City and County of Honolulu