EXHIBIT B

ORIGINAL

Law Offices Of:
HARRISON & MATSUOKA

WILLIAM A. HARRISON    #2948
841 Bishop Street, Suite 800
Davies Pacific Center
Honolulu, Hawaii 96813
Telephone Number:  523-7041
Facsimile Number:  538-7579
E-Mail:  wharrison@hamlaw.net

Attorney for Defendant
CHARLES ERIC BROUGHTON

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 19 2013

at ____ o'clock and ____ min. ____ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STATE OF HAWAI'I, | CR. NO. CR13 00415  HG |
| Plaintiff, | NOTICE OF REMOVAL OF STATE PROSECUTION; DECLARATION OF COUNSEL; ATTACHMENTS "1" AND "2;" MEMORANDUM IN SUPPORT OF REMOVAL; CERTIFICATE OF SERVICE |
| vs. | |
| CHARLES ERIC BROUGHTON, Also known as Eric Broughton, | |
| Defendant. | REMOVAL OF CR. NO.: 13-1-0387; CIRCUIT COURT OF THE FIRST CIRCUIT, STATE OF HAWAI'I |

## NOTICE OF REMOVAL OF STATE PROSECUTION

Pursuant to 28 U.S.C. § 1442(a)(1), Charles Eric Broughton, a Federal Law

Enforcement Officer with the Department of Homeland Security, currently serving as

the Federal Protective Service (FPS) Area Commander in the Pacific Islands Area,

Exhibit "B"

Region 9, hereby removes the above-captioned criminal action commenced in the Circuit Court of the First Circuit, State of Hawaii (Criminal No.: 13-1-0387).

The removing party, Area Commander Charles Eric Broughton, was first arraigned in the Circuit Court of the First Circuit, State of Hawai'i on March 28, 2013. The Circuit Court set a pretrial/status conference for April 26, 2013. Trial in this matter is presently scheduled for May 28, 2013. See, a copy of the court minutes attached hereto as Attachment "1."

A copy of the Indictment, which the Prosecutor's Office served on Area Commander Charles Eric Broughton on March 28, 2013, is attached hereto as Attachment "2." A Memorandum in Support of this Notice of Removal, setting forth in detail the grounds warranting removal, and the Declaration of William A. Harrison are submitted herewith and incorporated herein by reference.

DATED: Honolulu, Hawaii, April 16, 2013.

Law Offices Of:
HARRISON & MATSUOKA

/s/ William A. Harrison
WILLIAM A. HARRISON
Attorney for Defendant
CHARLES ERIC BROUGHTON

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STATE OF HAWAI'I, | ) | CR. NO. _____ |
| | ) | |
| Plaintiff, | ) | **DECLARATION OF COUNSEL** |
| | ) | |
| vs. | ) | |
| | ) | |
| CHARLES ERIC BROUGHTON, | ) | |
| Also known as Eric Broughton, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## DECLARATION OF COUNSEL

1.      I am an attorney for Defendant Commander Charles Eric Broughton in the above-entitled case. I set forth the following facts upon information and belief as learned from discussions with my client and review of relevant discovery:

2.      Commander Broughton is a DHS federal law enforcement officer currently serving as the Federal Protective Service ("FPS") Area Commander in the Pacific Islands Area, Region 9.

3.      On December 20, 2012, Broughton reported an aggressive driving incident with Mario Ybarra ("Ybarra"), a soldier stationed in Hawaii. The incident occurred during Broughton's commute home in his authorized Home-to-Work vehicle, a white Chevrolet Tahoe with FPS and DHS markings and law enforcement

3

State of Hawaii v. CHARLES ERIC BROUGHTON; Cr. No. _____ _____; First Circuit
Court Cr. No.: 13-1-00387; **Notice of Removal of State Prosecution**

lights. Commander Broughton was in full uniform at the time of the incident and was in an "in service" status available to respond to emergency calls from the FPS MegaCenter.[1]

4.     While Commander Broughton was driving along H2 on Oahu, Hawaii, a white vehicle began tailgating him. Commander Broughton turned on his rear emergency lights in an effort to warn the driver. As Commander Broughton was exiting the freeway Ybarra, the driver of the white vehicle, pulled up next to Commander Broughton and leaned over the passenger side of his vehicle and "began violently displaying his middle finger" and yelling. Due to the location of the altercation on H2, Commander Broughton suspected that Ybarra was a military member and he assumed that Ybarra was heading to the Army installation located off of H2. Commander Broughton decided to report Ybarra's behavior, violation of 18 USC III and suspected anger management/PTSD to his military commander.

5.     Commander Broughton followed Ybarra to obtain his license plate and registered owner information from FPS dispatch.   Thereafter, Ybarra abruptly stopped in the middle of traffic lane and proceeded to leave his vehicle and approach Commander Broughton's driver side window, while yelling at him. When

---

[1] FPS utilizes communication centers called MegaCenters to communicate with its law enforcement personnel while they are in the field. The State of Hawaii falls under the responsibility of the Denver MegaCenter.

State of Hawaii v. CHARLES ERIC BROUGHTON; Cr. No. _____; First Circuit Court Cr. No.: 13-1-00387; **Notice of Removal of State Prosecution**

Commander Broughton saw Ybarra approaching the vehicle, fearing that Ybarra may have been armed Broughton removed his service weapon from its holster and placed it above his lap, in a tactical ready position. Commander Broughton stated that he returned the weapon to its holster once he determined that Ybarra was unarmed.

6.     Ybarra alleges that Commander Broughton placed his service weapon on his chest and asked Ybarra "if he had a problem." Ybarra claims that at that point he raised his arms, went back to his car, and departed the area. Soon after the encounter, Ybarra called 911 and reported the incident to the HPD. He also filed a complaint with FPS, which was recorded by the MegaCenter. On the contrary, Commander Broughton adamantly denies that he raised his weapon and certainly did not point it at any part of Ybarra's body.

7.     Pursuant to 28 C.F.R. § 50.15(a), federal employees may be provided representation in criminal proceedings in which they are charged in their individual capacities "when the actions for which representation is requested reasonably appear to have been performed within the scope of the employee's employment and the Attorney General or his designee determines that providing representation would otherwise be in the interest of the United States."

8.     Commander Broughton's actions were performed within the scope of his employment as a Federal FPS law enforcement officer. Included among the

enumerated police powers of an FPS law enforcement officer is the power to make arrests without warrant for misdemeanors committed in their presence and felonies based on probable cause. 41 U.S.C. § 1315 (b) (2) (c).

9.     While Commander Broughton's concern was for the safety of Ybarra, his passenger and other drivers, Ybarra's tailgating of Commander Broughton's marked Chevrolet Tahoe, aggressive hand gestures and stopping in roadway thereby blocking Commander Broughton's vehicle, reasonably constituted a violation of the 18 U.S.C. § 111 (b)'s prohibition against assaulting, intimidating or interfering with a federal officer.

10.     Commander Broughton was engaged in his authorized home to work commute in a government issued and marked law enforcement vehicle, while in full uniform. All expenses associated with his home-to-work commute, including fuel and vehicle maintenance are paid for with a General Services Administration vehicle fleet card. While not in a pay status during his commute, he is considered "in service." As such, he is required to check on and off the air with his locations when beginning and ending the commute, he is subject to dispatch and performance of law enforcement functions as directed, and he must respond to emergency situations or threats if warranted.

11.     Moreover, the DHS Home-to-Work directive recognizes that a law

State of Hawaii v. CHARLES ERIC BROUGHTON; Cr. No. _____; First Circuit Court Cr. No.: 13-1-00387; **Notice of Removal of State Prosecution**

enforcement employee who is authorized home-to-work transportation occupies "a position for which transportation between the employee's residence and various locations is essential to the safe and efficient performance of those [law enforcement] duties. Moreover, the directive makes it clear that the home-to-work vehicle is only for official use and that it is not for the convenience or comfort of the employee.

12.    Commander Broughton was driving his government issued law enforcement vehicle in an authorized home-to-work status and was acting within the scope of his duties when Ybarra tailgated Broughton. Ybarra was technically in violation of 18 U.S.C. § 111 once he began displaying aggressive behavior toward Broughton, and was subject to arrest by Broughton as discussed above. Broughton was in a law enforcement status as soon as he began to respond to Ybarra's aggressive behavior, bringing him clearly into the scope of his employment.

13.    When Ybarra exited his car and approached Broughton's vehicle, Broughton contacted the FPS MegaCenter in Denver and told the dispatcher that he was "having a problem with someone on the roadway." Using the radio and reporting the incident is clearly engaging in a law enforcement function. It was after this point that Ybarra claims Broughton's weapon was stuck in his chest. When Broughton called the dispatcher back he asked her to run the license plate of the car. Broughton followed up with the dispatcher a few minutes later and asked her to create an

7

incident report. Lastly, when Broughton reported Ybarra's conduct to the Military Police and Ybarra's Commanding Officer, he was doing so in a law enforcement capacity.

14.     In fact this conclusion and finding was indeed determined by the Department of Justice ("DOJ") after a request was made by Commander Broughton for DOJ representation was made. By letter dated January 4, 2013, Robert D. Paschall, Associate General Counsel for General Law, Homeland Security, concluded that Commander Broughton "was performing a law enforcement function and Ybarra's allegations relate to matters that occurred while [Commander] Broughton was within the scope of his employment."

I DECLARE UNDER PENALTY OF LAW THAT THE FOREGOING FACTS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

Executed on: April 16, 2013.            /s/ William A. Harrison
                                        WILLIAM A. HARRISON
                                        Attorney for Defendant
                                        CHARLES ERIC BROUGHTON

State of Hawaii v. CHARLES ERIC BROUGHTON; Cr. No. _____; First Circuit Court Cr. No.: 13-1-00387; Notice of Removal of State Prosecution

# ATTACHMENT "1"



Print | Help | New Search | Exit

## Court Minutes List

| Party Name: BROUGHTON, CHARLES ERIC | | | | | | 1PC13-1-000387 |
|---|---|---|---|---|---|---|
| | | | | | | Party Sequence: 1 |

| App. Type | Loc. | Type | Calendar Date | Phase | App. Desc. | App. Disp. |
|---|---|---|---|---|---|---|
| AAP | 1C08 | AP | 03-28-2013 | | ARRAIGNMENT AND PLEA | |
| ACC | 1C11 | AC | 03-28-2013 | | ASSIGNED CRIMINAL CALENDA | NGP |
| STC | 1C11 | CR | 04-28-2013 | | PRETRIAL & TRIAL STATUS C | |
| JRT | 1C11 | WK | 05-28-2013 | | JURY TRIAL | |

Next>

Next Party     Case Info.

# ATTACHMENT "2"

2

Case 1:13-cr-00415-HG   Document 4-3   Filed 05/10/13   Page 13 of 28   PageID.66

Case 1:13-cr-00415-HG   Document 1-3   Filed 04/19/13   Page 2 of 2   PageID #: 12
MAR-27-13 WED 04:30 PM   PR_CUTING ATTORNEY        FAX NO. 8_ '68 6483              P. 02

Indictment Presented
and Filed

<u>March 19, 2013</u>        <u>11:089A.</u>  M
Date                              Time

<u>A. Hoffman</u> Clerk
FIRST CIRCUIT COURT, STATE OF HAWAII

DEPARTMENT OF THE PROSECUTING ATTORNEY
City and County of Honolulu
1060 Richards Street
Honolulu, Hawaii 96813
Ph:   768-7400
FAX:  768-6483

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| STATE OF HAWAII | )  CR. NO. <u>13-1-0387</u> |
| v. | ) |
| CHARLES ERIC BROUGHTON, | )  TERRORISTIC THREATENING |
| also known as Eric Broughton, | )  IN THE FIRST DEGREE |
|  | )  (§ 707-716(1)(e), H.R.S.) |
| Defendant. | ) |
|  | )  INDICTMENT |
|  | ) |

## INDICTMENT

The Grand Jury charges:

On or about the 20th day of December, 2012, in the City and County of Honolulu, State of Hawaii, CHARLES ERIC BROUGHTON, also known as Eric Broughton, threatened Mario Ybarra, by word or conduct, to cause bodily injury to Mario Ybarra, with the use of a dangerous instrument, to wit, an instrument that falls within the scope of Section 706-660.1 of the Hawaii Revised Statues, with the intent to terrorize, or in reckless disregard of the risk of terrorizing Mario Ybarra, thereby committing the offense of Terroristic Threatening in the First Degree, in violation of Section 707-716(1)(e) of the Hawaii Revised Statutes.

A True Bill found this day: _____ *March 17, 2013*

_____
Deputy Prosecuting Attorney
City and County of Honolulu

_____
Foreperson of the Grand Jury

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

STATE OF HAWAI'I,                    )  CR. NO. _____
                                     )
                Plaintiff,           )  **MEMORANDUM IN SUPPORT OF**
                                     )  **REMOVAL**
        vs.                          )
                                     )
CHARLES ERIC BROUGHTON,              )
Also known as Eric Broughton,        )
                                     )
                Defendant.           )
                                     )
_____     )

## MEMORANDUM IN SUPPORT OF REMOVAL

The defendant, Charles Eric Broughton, a Federal Law Enforcement Officer with the Department of Homeland Security ("DHS"), currently serving as the Federal Protective Service ("FPS") Area Commander in the Pacific Islands Area, Region 9, ("Commander Broughton"), by and through his undersigned counsel, hereby submits this memorandum in support of his removal to this court of the above-captioned criminal case from the Circuit Court of the First Circuit, State of Hawaii; indictment filed on March 19, 2013 (Attachment "2").

Federal agents facing prosecution commenced in state courts have a statutory right to remove such prosecutions to federal court pursuant to 28 U.S.C. § 1442(a)

(1). Removal is proper where a federal law enforcement officer acting within the scope of his authority asserts a colorable federal defense to such prosecution.

## I.   OVERVIEW

### A.   Procedural Background

On March 19, 2013, the State of Hawaii indicted Commander Broughton on the charge of Terroristic Threatening in the First Degree, in violation of H.R.S. § 707-716(1) (e).   On March 28, 2013, Commander Broughton appeared in the Circuit Court of the First Circuit, State of Hawai'i for arraignment on the charge.[2] Commander Broughton pled "not guilty" to the charge. Trial is currently scheduled to commence on May 28, 2013.

The applicable sections of Terroristic Threatening in the First Degree, H.R.S. § 707-716 (1) (e) reads:

> (1)  A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening:
>   (a)  By threatening another person ...
>   (e)  With the use of a dangerous instrument; ...
> (2)  Terroristic threatening in the first degree is a class C felony.

### B.   Factual Background

Commander Broughton is a DHS federal law enforcement officer currently serving as the Federal Protective Service ("FPS") Area Commander in the Pacific

---

[2] This notice of removal is timely under 28 U.S.C. § 1446(c) (1) because it is filed less than 30 days from Commander Broughton's arraignment date of March 28, 2013.

State of Hawaii v. CHARLES ERIC BROUGHTON; Cr. No. _____; First Circuit Court Cr. No.: 13-1-00387; **Notice of Removal of State Prosecution**

Islands Area, Region 9. On December 20, 2012, Broughton reported an aggressive driving incident with Mario Ybarra ("Ybarra"), a soldier stationed in Hawaii. The incident occurred during Broughton's commute home in his authorized Home-to-Work vehicle, a white Chevrolet Tahoe with FPS and DHS markings and law enforcement lights. Commander Broughton was in full uniform at the time of the incident and was in an "in service" status available to respond to emergency calls from the FPS MegaCenter.[3]

While Commander Broughton was driving along H2 on Oahu, Hawaii, a white vehicle began tailgating him. Commander Broughton turned on his rear emergency lights in an effort to warn the driver. Ybarra, the driver of the white vehicle, pulled up next to Commander Broughton and leaned over the passenger side of his vehicle and "began violently displaying his middle finger" and yelling. Due to the location of the altercation on H2, Commander Broughton suspected that Ybarra was a military member and he assumed that Ybarra was heading to the Army installation located off of H2. Commander Broughton decided to report Ybarra's behavior to his military commander.

Commander Broughton followed Ybarra to the entry gate of Wheeler Army Airfield intending to report the incident to the Military Police working at the gate. As

---

[3] FPS utilizes communication centers called MegaCenters to communicate with its law enforcement personnel while they are in the field. The State of Hawaii falls under

traffic was stopped before they reached the entry gate, Ybarra proceeded to leave his vehicle and approach Commander Broughton's driver side window, while yelling at him. When Commander Broughton saw Ybarra approaching the vehicle, Broughton removed his service weapon from its holster and placed it on his lap, fearing that Ybarra may have been armed. Commander Broughton stated that he returned the weapon to its holster once he determined that Ybarra was unarmed.

Ybarra alleges that Commander Broughton placed his service weapon on his chest and asked Ybarra "if he had a problem." Ybarra claims that at that point he raised his arms, went back to his car, and departed the area. Soon after the encounter, Ybarra called 911 and reported the incident to the HPD. He also filed a complaint with FPS, which was recorded by the MegaCenter. On the contrary, Commander Broughton adamantly denies that he raised his weapon and certainly did not point it at any part of Ybarra's body.

Pursuant to 28 C.F.R. § 50.15(a), federal employees may be provided representation in criminal proceedings in which they are charged in their individual capacities "when the actions for which representation is requested reasonably appear to have been performed within the scope of the employee's employment and the Attorney General or his designee determines that providing representation would otherwise be in the interest of the United States."

_____

the responsibility of the Denver MegaCenter.

12

Commander Broughton's actions were performed within the scope of his employment as a Federal FPS law enforcement officer. Included among the enumerated police powers of an FPS law enforcement officer is the power to make arrests without warrant for misdemeanors committed in their presence and felonies based on probable cause. 41 U.S.C. § 1315 (b) (2) (c).

While Commander Broughton's concern was for the safety of Ybarra, his passenger and other drivers, Ybarra's tailgating of Commander Broughton's marked Chevrolet Tahoe and aggressive hand gestures while driving alongside Commander Broughton on the freeway reasonably constituted a violation of the 18 U.S.C. § 111 (b)'s prohibition against assaulting, intimidating or interfering with a federal officer.

The test that many courts, including the Ninth Circuit Court of Appeals, apply to determine if a federal officer was engaged in the performance of official duties for 18 U.S.C. § 111 purposes is whether the federal officer was acting within the scope of what the officer was employed to do, or was instead "engaged in a personal frolic or detour." See U.S. v. Schweitzer, 35 Fed. Appx. 331 (9th Cir. 2002) (holding that a mail carrier was engaged in official duties even though an assault was prompted by a mail carrier trying to stop an assault on a third party from her postal truck while delivering mail) citing U.S. v. Hohman, 825 F.2d 1363, 1364 (a National Park Service employee was engaged in official duties even after he completed his shift and changed clothes);

13

State of Hawaii v. CHARLES ERIC BROUGHTON; Cr. No. _____ ; First Circuit Court Cr. No.: 13-1-00387; **Notice of Removal of State Prosecution**

*United States v. Spears*, 631 F.2d 114, 117 (9th Cir. 1980) (a Forest Service employee was engaged in official duties even though he socialized with campers after telling them to move their campsite). *See, also U.S. v. Hoffer*, 869 F.2d 123 (2d Cir. 1989) (a DEA agent was engaged in official duties when she was attacked because "she was using her government-owned automobile - an automobile issued to her for work-related use only-to return her surveillance assignment."

Just like the mail carrier in *Schweitzer*, Commander Broughton did not "seek out" Ybarra and was not engaged in a personal frolic or detour. Upon being tailgated by Ybarra and after being yelled and gestured at, Commander Broughton exercised his powers to investigate a potential Section 111 violation against him personally.

In   *U.S. v. Evans*, the 6th Circuit recognized that FPS law enforcement personnel have jurisdiction off of Federal property to make arrests for threats against Federal law enforcement officers, and found that "[i]t makes no difference whether or not [the threat] occurs on federal property. It's the threat against the federal law enforcement officer."[4]

Additionally, Commander Broughton would certainly be considered within the scope of his employment if the facts giving rise to this incident resulted in a Federal Tort Claims Act ("FTCA") claim against the United States or a *Bivens* suit against Commander Broughton. State law determines if an employee is acting within the

State of Hawaii v. CHARLES ERIC BROUGHTON; Cr. No. _____; First Circuit
Court Cr. No.: 13-1-00387; **Notice of Removal of State Prosecution**

scope of his or her employment in the FTCA or *Bivens* context. 28 U.S.C. § 1346 (b)(1); *Shiraishi v. United States,* 2007 WL 2263071 (U.S.D.C. HI, August 3, 2007 (applying State law as to whether or not a Westfall Certificate issued by the U.S. Attorney for the District of Hawaii was proper in a *Bivens* suit).

Here Commander Broughton was engaged in his authorized home to work commute in a government issued and marked law enforcement vehicle, while in full uniform. All expenses associated with his home-to-work commute, including fuel and vehicle maintenance are paid for with a General Services Administration vehicle fleet card. While not in a pay status during his commute, he is considered "in service." As such, he is required to check on and off the air with his locations when beginning and ending the commute, he is subject to dispatch and performance of law enforcement functions as directed, and he must respond to emergency situations or threats if warranted.

Moreover, the DHS Home-to-Work directive recognizes that a law enforcement employee who is authorized home-to-work transportation occupies "a position for which transportation between the employee's residence and various locations is essential to the safe and efficient performance of those [law enforcement] duties. Moreover, the directive makes it clear that the home-to-work vehicle is only for official use and that it is not for the convenience or comfort of the employee.

---

[4] *U.S. v Evans,* 581 F.3d *333, 342 (6th Cir.* 2009).

State of Hawaii v. **CHARLES ERIC BROUGHTON**; Cr. No. _____; First Circuit Court Cr. No.: 13-1-00387; **Notice of Removal of State Prosecution**

Commander Broughton was driving his government issued law enforcement vehicle in an authorized home-to-work status and was acting within the scope of his duties when Ybarra tailgated Broughton. Ybarra was technically in violation of 18 U.S.C. § 111 once he began displaying aggressive behavior toward Broughton, and was subject to arrest by Broughton as discussed above. Broughton was in a law enforcement status as soon as he began to respond to Ybarra's aggressive behavior, bringing him clearly into the scope of his employment.

When Ybarra exited his car and approached Broughton's vehicle, Broughton contacted the FPS MegaCenter in Denver and told the dispatcher that he was "having a problem with someone on the roadway." Using the radio and reporting the incident is clearly engaging in a law enforcement function. It was after this point that Ybarra claims Broughton's weapon was stuck in his chest. When Broughton called the dispatcher back he asked her to run the license plate of the car. Broughton followed up with the dispatcher a few minutes later and asked her to create an incident report. Lastly, when Broughton reported Ybarra's conduct to the Military Police and Ybarra's Commanding Officer, he was doing so in a law enforcement capacity.

In fact this conclusion and finding was indeed determined by the Department of Justice ("DOJ") after a request was made by Commander Broughton for DOJ

16

representation was made. By letter dated January 4, 2013, Robert D. Paschall, Associate General Counsel for General Law, Homeland Security,  concluded that Commander Broughton "was performing a law enforcement function and Ybarra's allegations relate to matters that occurred while [Commander] Broughton was within the scope of his employment."[5]

## II.     THE APPLICABLE LEGAL STANDARD

The federal officer removal statute, 28 U.S.C. § 1442, provides, in pertinent part, that:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) ..., any officer (or any person acting under that officer) of the United States or any agency thereof, sued in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

The federal officer removal statute serves "to protect the integrity of federal governmental operations by providing a federal forum in the first instance for cases wherein federal officials must raise defenses arising from their official duties." *Willingham v. Morgan*, 395 U.S. 402, 405 (1969); *accord Durham v. Lockheed Martin Corp.*,

---

[5] If necessary, counsel will provide the court with a copy of the Paschall letter at the hearing on this matter.

17

445 F.3d 1247, 1252 (9th Cir. 2006); *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981). "One of the primary purposes of the removal statute - as its history clearly demonstrates - was to have such defenses litigated in the federal courts." *Willingham*, 395 U.S. at 407. The Supreme Court read the statute broadly to effectuate this intended purpose See id. (opining that because "Congress has decided that federal officers . . . require the protection of a federal forum," this policy, which underlies § 1442(a) (I), "should not be frustrated by a narrow, grudging interpretation of [that statute)'); *United States v. Penn. Env. Hearing Bd.*, 377 F. Supp. 545, 553 (MD. Pa. 1974) (federal officer removal statute must be liberally construed[,] [o]therwise, federal officers may be prevented from having their cases heard in a federal forum ...").

To establish jurisdiction, the Supreme Court requires that defendants removing under 28 U.S.C. § 1442(a) (1) allege a colorable federal defense. *Mesa v. California*, 489 U.S. 121,129 (1989). "By raising a colorable federal defense in his removal petition, the defendant-official transforms the otherwise nonremovable state law action into one that falls within the federal court's 'arising under' jurisdiction." *Jamison v. Wiley*, 14 F.3d 222, 239 (4th Cir. 1994). This requirement, however, does not oblige a federal officer to prove that he will prevail on his federal defense in order to be entitled to removal. *Willingham*, 395 U.S. at 407 ("The officer need not win his case before he can have it removed."); *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001) ("For a defense to be considered colorable, it need only be plausible"); *Torres v. CBS News*, 854 F. Supp. 245, 247-48 (S.D.N.Y. 1994) (averment of immunity is sufficient for

State of Hawaii v. CHARLES ERIC BROUGHTON; Cr. No. _____; First Circuit Court Cr. No.: 13-1-00387; **Notice of Removal of State Prosecution**

removal even though the bulk of authority weighs against the success of the defense). Indeed, one of the primary purposes of the federal officer removal statute is to protect federal officers by allowing them to have the validity of the federal defense of immunity determined in a federal court. *Willingham,* 395 U.S. at 407.

## III.   COMAMDER BROUGHTON IS ENTITLED TO REMOVAL

As a matter of law, Commander Broughton is entitled to removal if he can show: (1) that he is a federal officer, (2) he is being prosecuted for an act that was performed under color of office, and (3) he alleges, a colorable federal defense. All of the conditions for removal are satisfied here. Therefore, removal of this ease is proper.

### A.   Commander Broughton is a Federal Officer

There can be no dispute that Commander Broughton is an officer of the United States, as contemplated in the federal officer removal statute. He is employed as a Federal Law Enforcement Officer with the Department of Homeland Security, currently serving as the Federal Protective Service Area Commander in the Pacific Islands Area, Region 9.  He is, therefore, an "officer of the United States."

### B.   Commander Broughton was Acting Under Color of Office

As set forth supra in the Factual Background, the circumstances conclusively demonstrate that Commander Broughton is being prosecuted for actions taken under color of office.

State of Hawaii v. CHARLES ERIC BROUGHTON; Cr. No. _____; First Circuit Court Cr. No.: 13-1-00387; **Notice of Removal of State Prosecution**

### C.  Commander Broughton has Raised a Colorable Federal Defense

The federal defense upon which Commander Broughton relies-to establish removal jurisdiction under 28 U.S.C. § 1442(a) (1) is the doctrine of Supremacy Clause immunity. At this juncture, the Court must only assess whether Supremacy Clause immunity is a colorable defense.

For over 100 years, the federal courts have recognized that the Supremacy Clause of the United States Constitution protects federal officers from state prosecution for conduct performed in the course of their official duties. Under *In re Neagle*, 135 U.S. 1 (1890), and its progeny, a federal officer is immune from state prosecution when (1) the federal officer was performing an act that he was authorized to do by the law of the United States, and (2) in performing that act, the federal officer did what was necessary and proper for him to do. *Kentucky v. Long*, 837 F.2d 727, 744 (6th Cir. 1988).

The conduct need not be in fact necessary or even in retrospect justifiable. The second step of the analysis is satisfied so long as the federal officer had an honest belief that the act was necessary to the performance of his duty and the action he took was reasonable under the circumstances as they appeared to him. *Clifton v. Cox*, 549 F.2d 722, 72829 (9th Cir, 1977). "[F]ederal officers have long been held immune from state prosecutions for actions reasonable and necessary in the discharge of their

federal responsibilities." *Wyoming v. Livingston,* 443 F.3d 1211, 1217 (10th Cir. 2006) (citing *In re Neagle,* 135 U.S. at 75; *Ohio v. Thomas,* 173 U.S. 276, 284 (1899)).

Applying *Neagle* and *Clifton,* courts have held that federal agents are immune from state prosecution even where their conduct violates internal agency regulations[6] or exceeds their specific authority[7] and even where the legality of the mission in connection with which the individual officer was acting is questionable.[8] While there is no allegation that Commander Broughton's actions exceeded his authority, the fact that state prosecutions have been precluded in such cases demonstrates the breadth of the immunity to which federal officers are entitled under the Supremacy Clause.

Commander Broughton had an honest belief that the conduct on which the criminal charges in this case are based was necessary to the performance of his law enforcement duties and that the actions he took were reasonable under the circumstances as they appeared to him. At this stage, however, the Court need not decide whether Commander Broughton is ultimately entitled to immunity from state prosecution. The issue now is whether Commander Broughton has raised a colorable federal defense for purposes of removal. There can be no question but that be has.

---

[6] *See, e.g., Kentucky v. Long,* 8371 F.2nd 727, 733 (6th Cir. 1988).

[7] *See, e.g., Connecticut v. Marra,* 528 F. Supp. 381, 386 (D. Conn. 1981).

[8] *See. e.g., In re Lewis,* 83 F. 159, 160-61 (D. Wash. 1897).

21

IV.   **CONCLUSION**

For the foregoing reasons, removal of this criminal case from the Circuit Court of the First Circuit, State of Hawaii, to this Court is proper.

DATED:  Honolulu, Hawaii, April 16, 2013.

Law Offices Of:
HARRISON & MATSUOKA

/s/ William A. Harrison
WILLIAM A. HARRISON
Attorney for Defendant
CHARLES ERIC BROUGHTON

State of Hawaii v. CHARLES ERIC BROUGHTON; Cr. No. _____; First Circuit Court Cr. No.: 13-1-00387; **Notice of Removal of State Prosecution**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was duly served upon the following parties listed below via hand-delivery at their last-known addresses on the date of filing.

> KEITH KANESHIRO, ESQ.
> Prosecuting Attorney
> DEPARTMENT OF THE PROSECUTING ATTORNEY
> City and County of Honolulu
> State of Hawaii
> 9th & 10th Floors
> Alii Place
> 1060 Richards Street
> Honolulu, Hawaii  96813

Dated:  Honolulu, Hawaii, April _____, 2013.

Law Offices Of:
HARRISON & MATSUOKA

_____
By WILLIAM A. HARRISON
Attorney for Defendant
CHARLES ERIC BROUGHTON