KEITH M. KANESHIRO   2027
Prosecuting Attorney
JANICE T. FUTA   1765
Chief, Felony Trials Division
ELENA KAUʻI YAMANE   9414
Deputy Prosecuting Attorney
City and County of Honolulu
1060 Richards Street
Honoluluʻ, Hawaiʻi  96813
Telephone:  (808) 768-7495
Fax No.:  (808) 768-6436
Email:  eyamane1@honolulu.gov

Attorneys for State of Hawaiʻi

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| STATE OF HAWAIʻI,<br><br>               Plaintiff,<br><br>   vs.<br><br>CHARLES ERIC BROUGHTON,<br>Also known as Eric Broughton,<br><br>               Defendant. | ) CR. 13-00415 HG<br>) (Circuit Court No. 13-1-0387)<br>)<br>) STATE OF HAWAIʻI'S REPLY<br>) MEMORANDUM TO<br>) DEFENDANT'S REPLY TO STATE<br>) OF HAWAIʻI'S MEMORANDUM IN<br>) OPPOSITION TO DEFENDANT'S<br>) NOTICE OF REMOVAL OF STATE<br>) PROSECUTION; EXHIBITS "A" "B"<br>) and "C"; CERTIFICATE OF SERVICE |

**STATE OF HAWAIʻI'S REPLY MEMORANDUM TO DEFENDANT'S
REPLY TO STATE OF HAWAIʻI'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S NOTICE OF REMOVAL OF STATE PROSECUTION**

**EXHIBITS A through C**

and

**CERTIFICATE OF SERVICE**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| STATE OF HAWAI'I,<br><br>        Plaintiff,<br><br>  vs.<br><br>CHARLES ERIC BROUGHTON,<br>Also known as Eric Broughton,<br><br>        Defendant. | ) CR. 13-00415 HG<br>) (Circuit Court No. 13-1-0387)<br>)<br>) STATE OF HAWAI'I'S REPLY<br>) MEMORANDUM TO<br>) DEFENDANT'S REPLY TO STATE<br>) OF HAWAI'I'S MEMORANDUM IN<br>) OPPOSITION TO DEFENDANT'S<br>) NOTICE OF REMOVAL OF STATE<br>) PROSECUTION; EXHIBITS "A" "B"<br>) and "C"; CERTIFICATE OF SERVICE |

**STATE OF HAWAI'I'S REPLY MEMORANDUM TO DEFENDANT'S
REPLY TO STATE OF HAWAI'I'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S NOTICE OF REMOVAL OF STATE PROSECUTION**

Comes now the State of Hawai'i, by and through its undersigned counsel ("State"), and submits its reply to Charles Eric Broughton's ("Defendant") reply to State of Hawai'i's Memorandum in Opposition to Defendant's Notice of Removal of State Prosecution filed on June 6, 2013. The following reply and exhibits are submitted in addition to any evidence and arguments adduced at the hearing on this matter.

    **I.    DEFENDANT IS NOT ENTITLED TO REMOVAL
          BECAUSE HE FAILS TO DEMONSTRATE THAT HE
          WAS ACTING UNDER COLOR OF OFFICE**

Defendant alleges that his colorable defense is that he was properly on duty, conducting an investigation of a possible federal crime being perpetrated against

2

him.  Defendant's Reply at 8.  Specifically, Defendant asserts that Ybarra's alleged actions of tailgating, pointing a middle finger, and approaching Defendant's vehicle constituted a violation of 18 U.S.C. § 111(b) (prohibiting assault against, intimidation of, or interference with federal officers), and provided a sufficient basis for Ybarra's arrest.  Defendant's Reply at 6.  Defendant refers to Federal Protective Service ("FPS") Directive 15.1.2.1, titled "Law Enforcement Authority and Powers" ("LEAP"), to support his contention that he was following proper federal protocol and procedure in conducting his investigation and responding to the crime.  Defendant's Reply at 8.  Defendant further claims that he had "requisite authority and power to investigate a federal crime on State property."  Defendant's Reply at 8.

The test under 18 U.S.C. §111 of whether the agent is engaged in the performance of their duties is whether the federal agent is acting within the scope of the agent's employment or instead is engaged in personal frolic or detour.  *U.S. v. Hoffer*, 869 F.2d 123, 125-6 (9th Cir. 1989); *U.S. v. Schweitzer*, 35 Fed. Appx. 331, 332 (9th Cir. 2002).

Defendant's reliance on 18 U.S.C. § 111 is misplaced and after the fact.  According to Defendant's own letter to U.S. Department of Justice dated December 28, 2012 ("DOJ Letter") and accompanying attachments, Defendant was

not investigating Ybarra for a possible violation of 18 U.S.C. §111. Defendant's affidavit states:

> I was concerned that Ybarra's erratic driving, combined with his aggressiveness towards other motorist posed a risk to himself, his passenger and motorists traveling near him . . . and was concerned that Ybarra's irrational and aggressive behavior could be related to his service. As such, I decided to follow up with his military chain of command rather than local law enforcement.

Exhibit A, DOJ Letter unnumbered 5.

Additionally, Defendant's FPS Report states that he reentered the freeway and followed Ybarra's car and phoned Denver MegaCenter to obtain registration information from Ybarra's license plate. Exhibit A, DOJ Letter unnumbered 9.

Defendant's own report to FPS makes no mention of 18 U.S.C. § 111 or even the possibility of investigating a violation under that federal statute. In fact, by Defendant's own admission the purpose of getting back on the freeway and following Ybarra was to obtain registration information of Ybarra and report the incident to Ybarra's chain of command. Defendant's stated purpose of reentering the freeway is not even remotely related to federal procedure or within the scope of Defendant's FPS official duties or authority. Once Defendant detoured from his home to work route and reentered the freeway to follow Ybarra, he was not acting within the scope of his employment, but instead engaged in personal frolic or detour. When Defendant reentered the freeway he did not initiate a traffic stop for a violation of 18 U.S.C. § 111 and his actions were outside the scope of what he is

4

employed to do as a FPS officer.  Therefore, as Defendant was not within the scope of his employment and not conducting an investigation pursuant to 18 U.S.C. § 111, his actions were not under the color of office.

Additionally, Defendant cannot retroactively assert that on the date of incident he was investigating Ybarra for a violation of 18 U.S.C. §111.  It is disingenuous to assert that his purpose of investigation is *now* pursuant to a federal statute, when Defendant's own report claims different reasons for investigating Ybarra.  It is an attempt to retroactively cloak Defendant's actions in a federal statute so as to raise a federal question.

Defendant repeatedly asserts that when travelling from home to work in his government vehicle, he is "in service" yet there is no attempt to define that term or cite an authority supporting his position that he is on duty.  Further, in FPS Employee Broadcast Message dated March 30, 2012, Subject: Interim Modification to EPS Field Radio Policy 15.5.1.1 ("FPS Broadcast Message"), Director L. Eric Patterson establishes "MegaCenters may dispatch *off duty* personnel utilizing [home to work] transportation to incidents when they are the closest and when a delayed response by an on-duty unit is not appropriate." Exhibit B, FPS Broadcast Message at unnumbered 2 (emphasis added).  The FPS Broadcast Message indicates that when FPS personnel are travelling home to work in their government vehicles they are considered off duty, but may be dispatched

by a MegaCenter. When travelling home to work in a government vehicle Defendant is off duty, but may be dispatched if necessary.

On date in question, Defendant was not dispatched by a MegaCenter and thus he was off duty travelling in a government vehicle. Defendant has failed to provide any authority stating that he is on-duty when travelling home to work. As Defendant was not dispatched by a MegaCenter, he remained off duty and outside the scope of his employment when he reentered the freeway to obtain Ybarra's registration information.

LEAP clearly limits FPS law enforcement officer's authority on non-federal, state property and states that "[a]s a general rule, FPS law enforcement personnel have *no legal duty or authority* to enforce state or local laws *not related to the protection of federal property or persons on the property*." Exhibit C, LEAP at 5 (emphasis added). There are three recognized exceptions, however, and Defendant's conduct fails to fall within any of them.

The first exception is for "federal crimes committed in the presence of the officer or any felony cognizable under the laws of the United States if the officer has reasonable grounds to believe that the person arrested has committed or is committing a felony." Exhibit C, LEAP at 5.

Here, Defendant's conduct does not meet this exception because he has not ever asserted that Ybarra's alleged conduct amounted to a felony. Defendant never

6

attempted to arrest Ybarra in connection with a felony charge.  Furthermore, Defendant had no reasonable grounds to believe Ybarra committed a felony or was committing a felony.  Defendant's stated purpose in reentering the freeway was to obtain Ybarra's registration information.

The second exception is for enforcement of state and local laws concurrently with local law enforcement pursuant to an agreement with a state or local government.  Exhibit C, LEAP at 5.  Defendant's conduct does not meet this exception because there is no agreement with a state or local government for enforcement of state or local laws.

The third exception relates to the Federal Law Enforcement Good Samaritan Act.  If law enforcement personnel "take reasonable action, including the use of force, to protect an individual in the presence of the officer of a crime of violence; provide immediate assistance to an individual who has suffered or who is threatened with bodily harm; or prevent the escape of any individual who the officer reasonably believes has committed a crime of violence in the presence of the officer.  Exhibit C, LEAP at 5.

In this case, Defendant fails to show how his conduct fits within this exception.  Defendant has never claimed, nor could he claims that he was protecting an individual from a crime of violence.  Defendant was not providing any assistance to any individual who suffered or was threatened with bodily harm.

Lastly, Defendant has not claimed that he was preventing the escape of someone who committed a crime of violence. Defendant's admitted purpose in detouring from him home to work route was to obtain Ybarra's registration information and report Ybarra to his chain of command.

Further, Department of Justice Office of Legal Counsel has recognized that "[e]gregious conduct by the officer or efforts to enforce a minor infraction that is not a serious crime may not be within the scope of employment." Exhibit C, LEAP at 6.

Defendant's conduct was outside his authority on non-federal, state property and not within the scope of his employment. Defendant fails to establish that his conduct was authorized by any of the exceptions allowed by LEAP on non-federal property. Similarly, Defendant fails to show under these facts that he had any authority or power to investigate a federal crime on state property. Additionally, by Defendant's own statements prior to seeking legal counsel, he was not investigating a federal crime. As Defendant had no authority and was not investigating a federal crime his conduct was not under color of office.

## II. DEFENDANT IS NOT ENTITLED TO REMOVAL BECAUSE HE FAILS TO ESTABLISH A CAUSAL CONNECTION BETWEEN HIS ALLEGED CONDUCT AND OFFICIAL DUTIES

To remove a case to federal court the defendant must establish that the suit is "for a[n] act under color of office," *See* 28 U.S.C. § 1442(a)(3). To satisfy this

requirement, the defendant must establish that there is a "causal connection between what the officer has done under asserted official authority" and the action against him. *Maryland v. Soper,* 270 U.S. 9, 33, 46 S.Ct. 185, 190, 70 L.Ed. 449 (1926) (interpreting predecessor statute); *see also Willingham v. Morgan,* 395 U.S. 402, 409, 89 S.Ct. 1813, 1817 (1969).

Defendant fails to establish a casual connection between his charged conduct and his official authority. Defendant claims that the connection between his official duties and the charged conduct is that the Department of Homeland Security ("DHS") issued him the firearm and made it a condition of his employment to carry it. Defendant's Reply at 12.

In *Mesa v. California*, 489 U.S. 121, 109 S.Ct. 959 (1989), the Ninth Circuit and United States Supreme Court rejected removal under analogous facts where federal postal service employees committed state crimes in their federally issued mail truck. *See Mesa*, 489 U.S. at 123, 109 S.Ct. at 961. Additionally, in Mesa, the federal postal employees were *on duty* when they committed the state traffic crimes. *See Mesa*, 489 U.S. at 123, 109 S.Ct. at 961. The *Mesa* defendants filed a notice to remove the case to federal court under 28 U.S.C. § 1442(a)(1). *Id.* The Ninth Circuit characterized the issue as whether "a federal postal employee [can] remove his state criminal prosecution to federal court *when no issue of federal law will arise at trial* and when the only federal component of the case is that he was

9

on duty when the relevant acts allegedly occurred[.]" *Mesa*, 813 F.2d at 961. The Ninth Circuit held that "a federal officer's acts performed while on duty are not automatically done 'under color of [federal] office.'" *Id.* at 967 (quoting 28 U.S.C. § 1442(a)(1)). The Ninth Circuit held that *Mesa* defendants could not remove the state prosecutions to federal court when they raised no colorable claim of federal immunity or other federal defense. *Mesa*, 813 F.2d at 967. The United States Supreme Court agreed when it held that "[f]ederal officer removal under 28 U.S.C. 1442(a) must be predicated upon averment of a federal defense." *Mesa*, 489 U.S. at 139, 109 S.Ct. at 970.

In this case, DHS providing Defendant with a federally issued firearm and requiring him to carry it does not bring Defendant's actions into an official capacity establishing a causal connection. Arguably, *Mesa* defendants had a stronger position for removal as their crimes were committed while on duty in their federally issued mail trucks. Even assuming, *arguendo*, that Defendant was on duty, he has not established a causal connection between his official duties and his conduct giving rise to the state charges. Specifically, Defendant has not shown or produced any documentation that authorizes the use of his firearm on non-federal, state property under the facts alleged or the facts as the Defendant reconstructs them.

There is no casual connection to Defendant's official duties, especially given FPS law enforcement officers' limited authority on non-federal, state property. Defendant fails to demonstrate how his federal duties required him to detour from his home to work route, re-engage Ybarra by getting back onto the freeway to obtain a license plate, follow Ybarra, and point his federally issued firearm at Ybarra.  When Defendant got back on the freeway to follow Ybarra he was engaged in frolic and detour that had no relevance to his official duties as an FPS officer.  As such, Defendant fails to establish a causal connection and fails to carry his burden.

Dated at Honolulu, Hawai'i:   June 13, 2013.

        Respectfully submitted,

        Plaintiff State of Hawai'i

        By KEITH M. KANESHIRO
           Prosecuting Attorney

        By  /s/ JANICE T. FUTA
           JANICE T. FUTA
           ELENA KAU'I YAMANE
           Deputy Prosecuting Attorneys
           City and County of Honolulu