# EXHIBIT A

12-4606ST

December 28, 2012

Rupa Bhattacharyya
Director, Constitutional and Specialized Tort Litigation
U.S. Department of Justice, Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, D.C. 20044

Re: Department of Justice Representation in Possible Criminal Investigation by Hawaiian Police Department

Dear Ms. Bhattacharyya:

    I am a Federal Protective Service (FPS) law enforcement officer with the Department of Homeland Security (DHS). I currently serve as an Area Commander in the Pacific Islands Area, Federal Protective Service (FPS) Region 9.

    On December 20, 2012, I was involved in an incident with an aggressive driver, who happened to be a Soldier stationed in Hawaii, during my commute home. I was driving my authorized Home to Work vehicle which is a white Chevy Tahoe with FPS and DHS markings and law enforcement lights when the individual tailgated me and displayed aggressive behavior directed at me. I was in full uniform at the time of the incident and was in an "in service" status available to respond to emergency calls from the FPS communications center. Rather than involve local law enforcement, I reported the individual's behavior to his military command as I felt it was most appropriate. A detailed factual account is set forth in the attached Affidavit.

    On December 21, 2012, I learned that the individual with whom I had the incident had called 911 alleging that I had threatened him with my service weapon and that the Honolulu Police Department (HPD) wanted to question me about the incident. While I am willing to be interviewed by HPD, I would like to have Counsel present since the allegations being made against me include criminal assault and battery with a weapon. The HPD has been informed that I am seeking DOJ representation.

    Accordingly, pursuant to the Code of Federal Regulations, Title 50, Section 50.15, I hereby request that the Department of Justice provide me legal representation in this matter. I have already been in contact with Assistant U.S. Attorney Derrick Watson, in the U.S. Attorney's Office for the District of Hawaii and he is available to represent me if permission is granted.

    Enclosed is my Form DOJ 399, Acknowledgement of Conditions of Department Representation. Should you have any questions, you may contact me at 808-541-1317 (office), 808-341-2790 (cell) or Eric.Broughton@dhs.gov.

Sincerely,

Eric Broughton
Area Commander, Pacific Islands Command
Federal Protective Service, Region 9
National Protection and Programs Directorate
U.S. Department of Homeland Security

Enclosure: DOJ Form 399

**Exhibit A**

257

U.S. Department of Justice

Acknowledgment of Conditions
of Department Representation
Form DOJ-399

**Case Caption**

N.A.

**Court Number & District**

N.A.

**Department Attorney & Telephone Number**

Rupa Bhattacharyya (202) 616-4140

**DOJ Number**

**Client Name & Contact Information**

Eric Broughton,
Area Commander, Pacific Islands Command, Federal Protective Service, Region 9
National Protection and Programs Directorate
U.S. Department of Homeland Security

This acknowledgment must be executed as part of your request for legal representation by the Department of Justice. The acknowledgment is designed to advise you of the extent and nature of the legal representation that can be provided to you by Department of Justice attorneys. Your signature at the end of the acknowledgment indicates your understanding of and agreement to such representation.

The acknowledgment may be submitted either at the time you request representation or immediately after you have been notified that the Department has approved your pending request.

If you agree to accept Justice Department representation pursuant to the provisions set forth below, please execute the signature block at the end of the acknowledgment and return it to the person furnishing you the acknowledgment. If the Department has advised that it will provide you with representation, the Department's representation will be considered to have taken effect on the date it was first authorized provided that you have signed and returned this acknowledgment. If this acknowledgment is being submitted as part of your request for representation, you will be advised of the Department's decision promptly after it has been made.

Your representation will be governed by the Attorney General's Representation Guidelines set forth in 28 C.F.R. §§ 50.15 and 50.16. A copy will be furnished upon request.

Representation is provided under the Guidelines upon a determination that it is in the interest of the United States to do so. Additionally, if you are being sued for conduct in your capacity as a current or former federal employee or official, representation is provided if it reasonably appears that such conduct was taken within the scope of your federal employment. The following representation provisions constitute the more significant features of the Representation Guidelines.

(1) *Attorney-Client Communication Privilege*

All written or oral communications between yourself and your assigned Justice Department lawyer will be protected by the traditional attorney-client privilege.

(2) *Claims Against The United States*

Your Justice Department attorney will not assert on your behalf any claim you may have against the United States in this case; nor will he or she assert any claim you might have against other federal employees.

**258**

### (3) *Counterclaims*

As a general policy, your Department of Justice attorney can only undertake to defend you. He or she will not assert an affirmative claim on your behalf against the plaintiff or anyone else. If you strongly believe that such a claim should be asserted, your normal recourse would be for you to hire a private attorney at your personal expense to press that claim. In the rare instance when an affirmative claim would further not only your defense but also the interests of the United States, the Department will consider pressing the claim.

### (4) *Conflicts With The United States*

If there is a legal argument which should be made in your defense, but which conflicts with a legal position taken by the United States, or any of its agencies, in this or another case, your Department of Justice attorney will not make the argument. You will be advised of this fact so that you may assess available options. Correspondingly, should you ever have questions in this regard, you should take the opportunity to discuss them with your assigned Justice Department attorney.

### (5) *Conflicts With Co-Defendants*

If there is a material conflict of interest between you and one of your individually-sued co-defendants, whether factual or legal in nature, your Department of Justice attorney will advise you of this fact so that you may assess available options. Correspondingly, should you ever become aware of such conflicts, you should immediately bring them to the attention of your Justice Department attorney. Normally, in such cases, it will not be possible for your Justice Department lawyer to continue representing you and other co-defendants having mutually conflicting interests.

### (6) *Defending Co-Defendants*

If your Justice Department attorney is representing other defendants in your case in addition to yourself, including the United States or an agency, the Department attorney may elect to press available defenses that could result in the dismissal of a co-defendant before yourself.

### (7) *Appeals*

If the judgment of the court is in your favor and the losing plaintiff appeals, representation will continue throughout the appellate stage in this case. In the event of an adverse judgment against you, the Solicitor General of the United States will determine whether an appeal by your Justice Department attorney would be in the interest of the United States. If not, you will be promptly advised in order to discuss available options.

### (8) *Retention Of Private Counsel*

In certain limited circumstances where a Department of Justice attorney can no longer represent you, such as those circumstances discussed in paragraphs (4), (5) and (7), the Department may elect in its discretion to provide you with a private attorney at government expense. You will be so advised if such circumstances arise.

### (9) *Paying Adverse Judgments*

In the event of an adverse money judgment entered against you in this matter, or against you and other individually-sued employees, you may be personally responsible for the payment of the judgment; there is no general right to indemnification from the United States. However, if the United States is a proper defendant and there is a final judgment entered jointly against you and the United States, the United States would pay the judgment. By statute, the United States cannot be held liable for punitive damages (damages awarded to punish a defendant). Therefore, you would be personally responsible in the unlikely event punitive damages are assessed.

**I HAVE READ THE FOREGOING CONDITIONS OF DEPARTMENT REPRESENTATION AND ACCEPT THEIR TERMS.**

_____  12/28/12
*Client Signature and Date*

**259**

## AFFIDAVIT

I, Eric Broughton, make the following statement, with knowledge that any material false representation on my part, would subject me to a charge of perjury:

1. I am a Federal Protective Service (FPS) law enforcement officer with the Department of Homeland Security (DHS). I currently serve as an Area Commander in the Pacific Islands Area, Federal Protective Service (FPS) Region 9. I have served in that capacity since July, 2011 and have been a law enforcement officer for over twenty years.

2. On December 20, 2012, at approximately 1520 hours, I was driving my marked FPS Tahoe north on the H2 freeway. I was last in line of 3 vehicles in the #1 lane at about 60-65 MPH in light rain. Traffic conditions were moderate. I saw a white vehicle approach me from behind at a speed that I estimated to be 80-85 MPH. When the car caught up to me it followed me at a distance of less than a single car length. After several seconds, I activated the rear flasher of my Tahoe for about two seconds in an effort to warn the driver to increase the space between our vehicles, which it did. There were no other vehicles behind the white car. After about ½ mile, I moved to the #2 lane and the white vehicle followed. As I approached the Mililani exit, I moved two additional lanes to the right, and into the exit lane. The white vehicle pulled up to my left side and the driver (later identified as Mario Ybarra) leaned over to the passenger side of his car and began violently displaying the middle finger of his right hand at me. He appeared to be yelling at me, but I could not hear what he was yelling. Ybarra's appearance suggested that he was a soldier and I suspected he was en route to the nearby Wheeler Army Airfield or Schofield Barracks Army Post. As the white vehicle passed, I saw that it was a white BMW coupe with a black convertible top and a female was in the passenger seat.

3. Based upon my experience as a law enforcement officer, I was concerned that Ybarra's erratic driving, combined with his aggressiveness towards other motorists posed a risk to himself, his passenger and motorists traveling near him. I was also aware that several local Army units had recently returned from combat missions overseas and was concerned that Ybarra's irrational and aggressive behavior could be related to his service. As such, I decided to follow up with his military chain of command rather than local law enforcement

4. I exited the freeway and then reentered via the onramp. I saw the BMW ahead and followed as it took the next exit (Lelehua Rd), which is a common route to Schofield Barracks and Wheeler Army Airfield. As the BMW turned onto the #2 lane of Kamehameha Highway and I followed at a distance of about two car lengths and phoned the FPS Denver MegaCenter (FPS's regional communication center) in order to obtain registration information from the license plate, which was now visible. As it approached the approached the entry gate to Wheeler Army Airfield, the driver changed to the #1 lane in what I believed was a preparation to turn left into Wheeler. I also changed lanes with the intent to also enter Wheeler and drive to the Military Police station. While I was speaking with DMC, the driver slowed to about 20 MPH and then suddenly stopped in the middle of the roadway prior to the intersection, blocking traffic. The driver got out of his car, left the door open and rapidly walked back toward my Tahoe. Fearing an unknown level assault, I drew my sidearm out of the holster and held it across my lap, while telling DMC that I had a subject approaching me, unfastened my seatbelt in preparation for an assault and disconnected the phone. As Ybarra got adjacent to my driver door he began yelling at me. I saw that he was unarmed and holstered my sidearm. I asked Ybarra what the problem was. He responded, "What's your fucking problem, why are you following me?" and demanded my name and badge number. I told Ybarra that we were blocking traffic and if he wanted to talk, to

pull over to the side of the road and I would speak with him. Ybarra again demanded my name and badge number and I repeated that I would talk to him on the side of the road. He said, "I'm not pulling over for you" and began to walk away. I asked if he was in the military and Ybarra answered, "That's none of your fucking business", and then jogged to his car, got in and drove away. As he slowed to turn left into Wheeler Army Airfield, I passed the BMW on the right in order to break contact. As I passed, I looked to see if there was a military sticker (DD 2220) on the windshield and Ybarra's female passenger yelled something to the effect of 'leave us alone'. I did not answer and continued past the BMW. I tried to call DMC, but they were in a test mode and my call was routed to another MegaCenter and I was told to call back after the test.

5. I drove directly to Schofield Barracks and went to the Military Police station. I called DMC back and obtained the registered owner information for the vehicle. The MP desk sergeant confirmed that Ybarra was an Army soldier and contacted his unit leadership. I drove to the Ybarra's unit headquarters, where I spoke with the officer and senior NCO on duty. I briefed them of the incident with Ybarra and shared my concern of his aggressive driving, and potential for aggressive behavior, particularly considering the behavior was directed toward uniformed law enforcement. The staff concurred that Ybarra's behavior was irrational and aggressive. I left my contact information with the staff, who told me the commander would contact me the following day. I notified DMC that the incident was resolved, requested an incident number and departed.

6. On December 21, 2012, at about 0700 hours, I spoke with Army CAPT Garfield Douse, Commander of the 2nd Squadron, 14th Cavalry (808-655-5675 / 580-284-1856). He told me that Ybarra was under his command and that he had been made aware of the incident the previous evening. I briefed CAPT Douse of the incident and passed on my concern that Ybarra's

irrational and aggressive behavior could be an indicator of an underlying anger management issue. I left my contact information with CAPT Douse and departed.

7. Later in the day on December 21, 2012, I became aware that Ybarra had called 911 alleging that I had threatened him with my service weapon and that the Honolulu Police Department wanted to question me about the incident.

_____   12/28/12
Eric Broughton              Date

12-460653

## FEDERAL PROTECTIVE SERVICE
** FOR OFFICIAL USE ONLY **

| CASE NUMBER D12015043 ☐ Follow-up Report | Occur Date Span 12/20/2012 thru | Occur Time Span 15:20:00 thru | Report Date 12/20/2012 | Report Time 15:20:00 |
|---|---|---|---|---|
| Code 2040 | Type of Offense or Incident ASSISTANCE - citizen assist (aid to any person) | | Arrive Date 12/20/2012 | Arrive Time 15:20:00 |
| Building No. 09-HI000 | Address 09-HI000 - Highway 2 at exit 7 Honolulu HI | | Rtn to Svc Dt 12/20/2012 | Rtn to Svc Tm 15:23:00 |
| Incident Location | Agency Name DHS NA PRO & PRO DIR - dhs national protection & programs directorate fps | | | Agency Code 7056 |

**A** Est Num Dem ☐ 1-10 ☐ 11-50 ☐ 51-100 ☐ 101-300 ☐ 301-500 ☐ 500+  Est Num Evc ☐ 0 ☐ 1-10 ☐ 11-50 ☐ 51-100 ☐ 101-300 ☐ 301-500 ☐ 500+

**NARRATIVE**

**INVOLVED PERSON** ☐ Victim ☐ Witness ☐ Suspect ☒ Subject ☐ Report Person ☐ Govt' Empl ☐ Govt' Contr ☒ Other ☐ Missing Person

| No. 1 | Name (last, first, middle) YBARRA, MARIO | Alias | Date of Birth / Age | Sex M | Race W | Height 509 | Weight 200 | Eyes | Hair |
|---|---|---|---|---|---|---|---|---|---|

| Address | | City | | State | Zip Code | Country |
|---|---|---|---|---|---|---|

**B**

| Driver's License Number | State | Social Security # | Nationality | Country of Birth | Home Phone |
|---|---|---|---|---|---|

| Scars, Marks, Tattoos / Other | Arrested ☐ | Citation Number | NCIC Number | Work Phone |
|---|---|---|---|---|

| Employer US ARMY | Employer City SCHOFIELD BARRACKS | State HI | Employer Zip | Employer Country United States |
|---|---|---|---|---|

**INVOLVED PERSON** ☐ Victim ☐ Witness ☐ Suspect ☐ Subject ☐ Report Person ☐ Govt' Empl ☐ Govt' Contr ☐ Other ☐ Missing Person

| No. | Name (last, first, middle) | Alias | Date of Birth / Age | Sex | Race | Height | Weight | Eyes | Hair |
|---|---|---|---|---|---|---|---|---|---|

| Address | | City | | State | Zip Code | Country |
|---|---|---|---|---|---|---|

**B**

| Driver's License Number | State | Social Security # | Nationality | Country of Birth | Home Phone |
|---|---|---|---|---|---|

| Scars, Marks, Tattoos / Other | Arrested ☐ | Citation Number | NCIC Number | Work Phone |
|---|---|---|---|---|

| Employer | Employer City | State | Employer Zip | Employer Country |
|---|---|---|---|---|

**VEHICLE** ☐ Stolen ☐ Damaged ☐ Recovered | ☐ Suspect ☒ Other ☐ Govt ☐ Evidence

| No. 1 | License No PGY056 | State HI | Reg Yr | Make BMW | Model | Veh Yr 2006 | Value |
|---|---|---|---|---|---|---|---|

| R/O Name (last, first, middle) YBARRA, MARIO & WENDY | Color BLK/WHT | VIN | NCIC Number |
|---|---|---|---|

**C**

| R/O Address | City WAHIAWA | State HI | Zip Code | Country United States |
|---|---|---|---|---|

**PROPERTY** ☐ Stolen ☐ Damaged ☐ Recovered | ☐ Suspect ☐ Found ☐ Other ☐ Govt ☐ Evidence ☐ Weapon

| No. | Type | Make | Model | Color |
|---|---|---|---|---|

| Owner Name (last, first, middle) | Serial Number | Value | NCIC Number |
|---|---|---|---|

**D**

| Address | City | State | Zip Code | Country |
|---|---|---|---|---|

| Officer Names/Signature / ID# BROUGHTON, ERIC 9V14 | Date 12/20/2012 | Supervisor | Date Approved |
|---|---|---|---|

Distribution: ☐ Investigations ☐ AUSA ☐ Local Prosecutor ☐ RO ☐ Other
Case Status: ☐ Open ☒ Closed ☐ Unfounded
TECSII Case Number:

** FOR OFFICIAL USE ONLY **

3155 Report
**264**
Page 1 of 3

**FEDERAL PROTECTIVE SERVICE**
** FOR OFFICIAL USE ONLY **

Narrative Continuation

2012-12-21 14:53:04.95

On 12/20/12, at about 1520 hrs, I was driving my marked FPS Tahoe north on the H2 freeway. I was last in line of 3 vehicles in the #1 lane at about 60-65 MPH in light rain. Traffic conditions were moderate. I saw a white vehicle approach me from behind at a speed that I estimated to be 80-85 MPH. When the car caught up to me it followed me at a distance of less than a single car length. After several seconds, I activated the rear flasher of my Tahoe for about two seconds in an effort to warn the driver to increase the space between our vehicles, which it did. There were no other vehicles behind the white car. After about ½ mile, I moved to the #2 lane and the white vehicle followed. As I approached the Mililani exit, I moved two additional lanes to the right, and into the exit lane. The white vehicle pulled up to my left side and the driver (later identified as Mario Ybarra) leaned over to the passenger side of his car and began violently displaying the middle finger of his right hand at me. He appeared to be yelling at me, but I could not hear what he was yelling. Ybarra's appearance suggested that he was a soldier and I suspected he was en route to the nearby Wheeler Army Airfield or Schofield Barracks Army Post. Ybarra's erratic driving, combined with his aggressiveness towards other motorists, warranted follow up with his military chain of command in the event it suggested a pattern of antagonistic behavior. Because several local units recently returned from combat missions, I recognized the possibility that Ybarra's irrational and aggressive behavior could be related to his service. As the white vehicle passed, I saw that it was a white BMW coupe with a black convertible top and a female was in the passenger seat.

I exited the freeway and then reentered via the onramp. I saw the BMW ahead and followed as it took the next exit (Lelehua Rd), which is a common route to Schofield Barracks and Wheeler Army Airfield. As the BMW turned onto the #2 lane of Kamehameha Highway and I followed at a distance of about two car lengths and phoned DMC in order to obtain registration information from the license plate, which was now visible. As it approached the approached the entry gate to Wheeler Army Airfield, the driver changed to the #1 lane in what I believed was a preparation to turn left into Wheeler. I also changed lanes with the intent to also enter Wheeler and drive to the Military Police station. While I was speaking with DMC, the driver slowed to about 20 MPH and then suddenly stopped in the middle of the roadway prior to the intersection, blocking traffic. The driver got out of his car, left the door open and rapidly walked back toward my Tahoe. Fearing an unknown level assault, I drew my sidearm out of the holster and held it across my lap, while telling DMC that I had a subject approaching me, unfastened my seatbelt in preparation for an assault and disconnected the phone.

As Ybarra got adjacent to my driver door he began yelling at me. I saw that he was unarmed and holstered my sidearm. I asked Ybarra what the problem was. He responded, "What's your fucking problem, why are you following me?" and demanded my name and badge number. I told Ybarra that we were blocking traffic and if he wanted to talk, to pull over to the side of the road and I would speak with him. Ybarra again demanded my name and badge number and I repeated that I would talk to him on the side of the road. He said, "I'm not pulling over for you" and began to walk away. I asked if he was in the military and Ybarra answered, "That's none of your fucking business", and then jogged to his car, got in and drove away. As he slowed to turn left into Wheeler Army Airfield, I passed the BMW on the right in order to break contact. As I passed, I looked to see if there was a military sticker (DD 2220) on the windshield and Ybarra's female passenger yelled something to the effect of 'leave us alone'. I did not answer and

OFFICER BROUGHTON, ERIC 9V14
CASE NUMBER D12015043                    ** FOR OFFICIAL USE ONLY **                    3155 Report
Page 2 of 3     265

12-460653

## FEDERAL PROTECTIVE SERVICE
** FOR OFFICIAL USE ONLY **

Narrative Continuation

continued past the BMW. I tried to call DMC, but they were in a test mode and my call was routed to another MegaCenter and I was told to call back after the test.

I drove directly to Schofield Barracks and went to the Military Police sttaion. I called DMC back and obtained the registered owner information. The MP desk sergeant confirmed that Ybarra was an Army soldier and contacted his unit leadership. I drove to the Ybarra's unit headquarters, where I spoke with the officer and senior NCO on duty. I briefed them of the incident with Ybarra and shared my concern of his aggressive driving, and potential for aggressive behavior, particularly considering the behavior was directed toward uniformed law enforcement. The staff concurred that Ybarra's behavior was irrational and aggressive. I left my contact information with the staff, who told me the commander would contact me the following day. I notified DMC that the incident was resolved, requested an incident number and departed.

On 12/21/12, at about 0700 hrs, I spoke with Capt Garfield Douse, commander of the 2nd Squadron, 14th Cavalry (808-655-5675 / 580-284-1856). He told me that Ybarra was under his command and that he had been made aware of the incident the previous evening. I briefed Capt Douse of the incident and passed on my concern that Ybarra's irrational and aggressive behavior could be an indicator of an underlying anger management issue. I believed that under the circumstances, it was more appropriate for Army leadership to address it than to refer it to local police as a law enforcement issue. I left my contact information with Capt Douse and departed.

OFFICER BROUGHTON, ERIC 9V14
CASE NUMBER D12015043

** FOR OFFICIAL USE ONLY **

3155 Report
266
Page 3 of 3