IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STATE OF HAWAI'I,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CHARLES ERIC BROUGHTON,<br>Also known as Eric Broughton,<br><br>　　　　Defendant. | )　CR. NO. 13-00415 HG<br>)<br>)<br>)　DECLARATION OF IVAN<br>)　PABON, JR.<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

I, **IVAN PABON, JR**, declare and say:

　　1.　I am an employee of the United States Department of Homeland Security National Protection and Programs Directorate, Federal Protective Service (FPS);

　　2.　I have worked in various positions for the FPS since 2002, and I have over thirty years of combined law enforcement and military experience, with a specialized proficiency in training and instruction;

　　3.　I currently serve as the Division Director of the Security and Basic Law Enforcement Training Division within FPS' Training and Professional

1

Development section, which is based at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. I have served in this role since December of 2012. In this position, I am responsible for managing and overseeing all FPS-conducted basic level law enforcement and physical security and training provided to FPS law enforcement officers. I also serve as FPS' Partner Organization Representative at FLETC;

4. From 2010 to 2012, prior to my current position, I was FPS' Enforcement Training Branch Chief at FLETC. I was responsible for the coordination and operation of all law enforcement training provided to FPS by FLETC, as well as all training provided by FPS instructors. As Branch Chief, I also advise the FLETC regarding the implementation of new and existing courses;

5. From 2008 to 2010, I was assigned as an Area Commander for the State of Wisconsin. In this position, I supervised the daily operations of FPS law enforcement officers and government contract security guards, who provided security to 190 federal facilities. In the scope of these duties, I coordinated with federal, state, and tribal law enforcement agencies, as well as public and private organizations and businesses to better support FPS law enforcement and security officers in their efforts to mitigate risks and render tenants and facilities safe. In my tenure as an Area Commander, I served numerous times as the District Commander for the states of Minnesota and Wisconsin;

6. In August 2002, I joined FPS as a Police Officer in Milwaukee, Wisconsin. In addition to my law enforcement duties, I served as a Defensive Tactics, Physical Fitness, Use of Force, and Senior Firearms Instructor;

7. I was active duty United States Marine Corps from 1982 to 2002. I retired in the rank of Gunnery Sergeant (E-7);

8. As part of my education, training, and experience, I have a full working knowledge and understanding of 18 United States Code § 111, titled "Assaulting, resisting, or impeding certain officers and employees;"

9. As part of my education, training, and experience, I have a full working knowledge and understanding of interplay of Federal and state law and the authority granted by Federal law and FPS Directives to enforce laws on state property;

10. In my capacity as Director at FLETC, I have personal knowledge of the specific FLETC training regimen undertaken by Area Commander Charles Eric Broughton ("Commander Broughton");

11. I am familiar with the facts of this case through the review of: Commander Broughton's Incident Report (3155), dated December 20, 2012, and other related documentation;

3

12. If called to testify regarding the actions of Commander Broughton, I would testify as follows based upon the information that I have reviewed to date:

(a) On the date and time of this incident, Commander Broughton was acting according to FPS training and policy. A FPS Area Commander is a first-level supervisor within FPS' chain of command. At the time of the incident, Commander Broughton was FPS' senior law enforcement officer for all islands in the State of Hawaii, American Territories of Guam, Saipan, American Soma;

(b) Commander Broughton was "in-service," in full FPS uniform, carrying FPS-issued weapons, and operating a marked FPS police unit at the time of the alleged incident. FPS law enforcement officers remain "in service" while traveling to and from the workplace in their authorized law enforcement vehicles. They are required to maintain radio contact with the FPS MegaCenter and to respond to service calls or other emergency situations while in that status;

(c) While in his Federal law enforcement status, Commander Broughton observed a combination of state statutory driving violations committed in his presence and actually directed at him (tailgating). Based on my training and experience, this was followed by aggressive behavior directed at him while driving a clearly-marked police vehicle, which led him

4

to believe the driver of the vehicle presented a potential threat to himself and others. Commander Broughton was acting within FPS policy (Law Enforcement Authority and Powers, Directive No. 15.1.2.1, dated November 11, 2011) and training when he decided to further investigate the driver and circumstances surrounding the driver's actions.

(d) Commander Broughton's combined years of law enforcement and military training and experience were such that he properly recognized the driver's behavior as inappropriately aggressive and irrational. Under normal circumstances, members of the public do not direct such aggressive and irrational behavior towards uniformed law enforcement officers operating clearly marked police vehicles;

(e) Commander Broughton followed standard law enforcement training and procedures by following the vehicle, obtaining the license plate number and contacting the Denver MegaCenter (DMC) dispatch to document the incident and to determine whether there was any outstanding information connected to the vehicle, such as outstanding warrants;

(f) When the driver stopped in the middle of a lane of travel on a busy highway, exited his car, and moved toward Commander Broughton, he was once again engaged in inappropriate aggressive behavior towards Commander Broughton. Based on my training and experience, knowledge

of the facts in this case, understanding of officer safety, and FPS Directive 15.1.2.1, Commander Broughton reasonably concluded that the other driver was preparing an assault, based upon the totality of the circumstances known to him at that time.  Standard law enforcement training teaches officers to exit their vehicle, give loud directions for the attacker to stop, and prepare to repel the attacker with a variety of weapons (including their firearm). In this situation, Commander Broughton lacked the ability to quickly exit his vehicle and made a conscious decision to prepare to defend himself by drawing his firearm into a tactical ready position (below driver side car window), extending his left arm into a defensive block, while simultaneously giving verbal commands to control the driver;

    (g)    Once Commander Broughton realized that the driver did not have a weapon and no longer posed a physical threat, Commander Broughton re-holstered his weapon pursuant to FPS training.

    (h)    While Commander Broughton would have been within his law enforcement authority and FPS policy to arrest the driver for a violation of 18 U.S.C. §111 (a)(2) when he approached Commander Broughton's vehicle in an aggressive manner, Commander Broughton instead showed a great deal of professional restraint;

6

(i)   In this incident, Commander Broughton observed dangerous violations of state traffic offenses and a possible violation of federal law, 18 U.S.C. §111(a) (2), which were directed at him. Commander Broughton appropriately exercised the discretion granted to law enforcement officers by choosing not to arrest the driver for the above observed violations of law or reporting him to local law enforcement, but instead simply report it to the driver's military chain of command on the installation;

(j)   In my opinion, Commander Broughton's actions were reasonable and were consistent with FPS policy and standard law enforcement training.

I DECLARE UNDER PENALTY OF PERJURY THAT THE ABOVE STATEMENTS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

Executed at Alexandria, Virginia on September 18th, 2013.

IVAN PABON, JR.
Division Director
Federal Law Enforcement Training Center