KEITH M. KANESHIRO   2027
Prosecuting Attorney
JANICE T. FUTA   1765
Chief, Felony Trials Division
ELENA KAUʻI YAMANE   9414
Deputy Prosecuting Attorney
City and County of Honolulu
1060 Richards Street
Honolulu, Hawaiʻi  96813
Telephone:  (808) 768-7495
Fax No.:  (808) 768-6436
Email:  eyamane1@honolulu.gov

Attorneys for State of Hawaiʻi

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| STATE OF HAWAIʻI,<br><br>    Plaintiff,<br><br>    vs.<br><br>CHARLES ERIC BROUGHTON,<br>Also known as Eric Broughton,<br><br>    Defendant. | )  CR. 13-00415 HG<br>)<br>)  STATE OF HAWAII'S OPPOSITION<br>)  TO DEFENDANT'S MOTION TO<br>)  DISMISS; EXHIBIT "A";<br>)  CERTIFICATE OF SERVICE<br>)<br>)<br>)<br>)<br>) |

**STATE OF HAWAII'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

**Exhibit "A"**

and

**CERTIFICATE OF SERVICE**

# TABLE OF CONTENTS

*Page*

STATE OF HAWAII'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS

I.     RELEVANT PROCEDURAL BACKGROUND ......................................... 2

II.    FACTUAL BACKGROUND ......................................................................... 3

III.   ARGUMENT ................................................................................................. 5

      A.     Supremacy Clause Does Not Apply
            Because Defendant Is Not Authorized To Act
            By The Laws Of The United States .................................................. 10

      B.     Defendant Did Not Believe That His
            Actions Were Necessary And Proper To
            Fulfilling His Federal Duties ............................................................ 16

      C.     Granting of Defendant's Motion To Dismiss Is Improper
            Because of The Numerous Factual Issues in Dispute ................... 23

EXHIBIT A

CERTIFICATE OF SERVICE

i

# <u>TABLE OF AUTHORITIES</u>

*Page*

*CASES*

*Birsch v. Tumbelson*
 31 F.2d 811, 812 (4th Cir. 1929)……………………………………………9
*Castle v. Lewis*
 254 F. 917, 926 (8th Cir. 1918)……………………………………....8, 9
*Commonwealth of Kentucky v. Long*
 837 F.2d 727, 744 (6th Cir. 1988)……………………………….6,8, 17, 23
*Clifton v. Cox*
 549 F.2d 722, 724 (9th Cir. 1977)……………………………....………16, 17
*Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S.Ct. 2727 (1982)……………...18
*Idaho v. Horiuchi*, 253 F.3d 359 (9th Cir. 2001) *vacated as moot*, 266 F.3d 979
(9th Cir. 2001)………………………………………………………………18
*In re Neagle*
 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890)……………………………6,7
*Johnson v. Maryland*
 254 U.S. 51 (1920)……………………………………………………..8
*McCulloch v. Maryland*
 17 U.S. (4 Wheat.) 316, 436 (1910)……………………………………....7
*Morgan v. California*
 743 F.2d 728 (9th Cir. 1984)………………………………… …..9, 10, 23
*New York v. Tanella*
 374 F.3d 141, 147 (2nd Cir. 2004) ……………………………..……...7,17
*North Carolina v. Ivory*
 906 F.2d 999 (4th Cir. 1990)………………………………………………. 19
*Tennessee v. Davis*
 100 U.S. 257, 262-63, 25 L.Ed. 648 (1879)……………………………7
*State of Conn. v. Marra*
 528 F.Supp. 381, 385 (D.C.Conn. 1981)……………………………………8
*United States ex rel. Drury v. Lewis*
 200 U.S. 1, 8, 26 S.Ct. 229, 231, 50 L.Ed. 343 (1906)……………..………8,9
*United States v. Baldwin*
 2013 WL 1751888 (D. Colo. 2013) ……………………………………… 11
*United States v. Hoffer*
 869 F.2d 123, 125-6 (9th Cir. 1989)…………………………………..15
*United States v. Farkash*

952 F. Supp. 696 (D. Colo. 1996)..................................................................... 11
*United States v. Torkington*
    812 F.2d 1347, 1354 (11th Cir. 1987)..............................................................6
*United States v. Schweitzer*
    35 Fed. Appx. 331, 332 (9th Cir. 2002).........................................................15
*Wyoming v. Livingston*
    443 F.3d 1211, 1221-1222, 36 Envtl. L. Rep. 20071, 53 A.L.R. Fed 2d 643
(10th Cir. 2006)................................................................................................17

*STATUTES*

## **Hawai`i Revised Statutes**

§ 291C-50………………………………………………………………14

§707-716(1)(e) ……………………………………………………………… 2

§ 803-16……………………………………………………………………12

§ 803-17………………………………………………………………...12


## **18 U.S.C.**

§ 111 ...................................................................................... 14, 15, 16

§ 111(a) ................................................................................... 11

§ 111(b) ................................................................................... 14

## **28 U.S.C.**

§ 1442(a)(1)............................................................................... 2

§ 1442(a)(3) .............................................................................. 11

## **40 U.S.C.**

§ 1315 ................................................................................ 10, 16


## **41 U.S.C.**

§ 1315(b)(2)(c) ................................................................ … 11

KEITH M. KANESHIRO   2027
Prosecuting Attorney
JANICE T. FUTA   1765
Chief, Felony Trials Division
ELENA KAUʻI YAMANE   9414
Deputy Prosecuting Attorney
City and County of Honolulu
1060 Richards Street
Honolulu, Hawaiʻi  96813
Telephone:  (808) 768-7495
Fax No.:  (808) 768-6436
Email:  eyamane1@honolulu.gov

Attorneys for State of Hawaii

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STATE OF HAWAII, | ) CR. 13-00415 HG |
| | ) |
| Plaintiff, | ) STATE OF HAWAII'S OPPOSITION |
| | ) TO DEFENDANT'S MOTION TO |
| vs. | ) DISMISS; EXHIBIT "A"; |
| | ) CERTIFICATE OF SERVICE |
| CHARLES ERIC BROUGHTON, | ) |
| Also known as Eric Broughton, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## STATE OF HAWAII'S OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

The State of Hawaii, by and through its undersigned counsel ("State"),

respectfully opposes Charles Eric Broughton's  ("Defendant") Motion to Dismiss

filed on September 18, 2013.  This filed opposition is submitted in addition to any evidence and argument adduced at the hearing on this matter.

## I.

## RELEVANT PROCEDURAL BACKGROUND

On March 19, 2013, in the Circuit Court of the First Circuit, State of Hawaii Defendant was charged via Grand Jury Indictment with the offense of Terroristic Threatening in the First Degree, in violation of Hawai'i Revised Statutes ("HRS") § 707-716(1)(e).

On March 28, 2013, Defendant appeared in the Circuit Court of the First Circuit, State of Hawaii for arraignment on the charge and pled not guilty.

On April 19, 2013, Defendant filed its Notice of Removal of State Prosecution based on 28 U.S.C. § 1442(a)(1) (ECF No. 1).

On May 10, 2013, the State of Hawaii filed its Opposition to Defendant's Notice of Removal of State Prosecution. (ECF No. 4).  The Court construed the State's filing as a Motion to Remand to State Court.  (ECF No. 15).

On June 6, 2013, Defendant filed its Opposition to the State's Motion for Remand.  (ECF No. 12).

On June 13, 2013, the State filed its Reply.  (ECF No. 13).

On June 19, 2013, this Court held a hearing on the Motion to Remand.  At the hearing, both parties stipulated that the Court may decide the Motion for Remand based on the pleadings, memoranda, and argument.  (ECF No. 15).

On June 28, 2013, this Court issued its Order Denying Plaintiff's Motion to Remand to the State Court.  (ECF No. 15).

On September 18, 2013, Defendant filed the instant Motion to Dismiss. (ECF No. 21).

## II.

## FACTUAL BACKGROUND

On December 20, 2012, at approximately 3:15 p.m., Mario Ybarra ("Ybarra") drove northbound on H2 Veterans Memorial Freeway ("H2 Freeway") in a BMW convertible with his wife Wendy Ybarra ("Wendy").  They traveled behind a white Chevy Tahoe sports utility vehicle ("SUV") in the far left lane which was the high occupancy vehicle ("HOV") lane.

The white SUV was driven by Defendant and traveling at a speed of approximately sixty (60) to sixty-five (65) per miles per hour.  The white SUV suddenly slowed to approximately fifty (50) miles per hour.  As the white SUV slowed by braking, Ybarra also slowed by braking.  At the same time, a black truck behind Ybarra's BMW began flashing its lights.

3

Ybarra activated his turn signal intending to change from the far left HOV lane to the next lane to the right. The black truck similarly activated its signal to change lanes. As Ybarra proceeded to change lanes, the white SUV activated its rooftop emergency light bar. Both the black truck and Ybarra responded to the flashing of emergency lights by remaining in the far left HOV lane.

The white SUV took the Mililani Mauka exit off of the H2 Freeway. As Defendant's white SUV exited the freeway, Ybarra was able to see that the side of the white SUV was labeled U.S. Department of Homeland Security. Defendant's white SUV did not have any U.S. Department of Homeland Security decals on the rear of the vehicle. Ybarra continued northbound on H2 Freeway and exited the H2 Freeway at the Mililani Tech Park exit.

Moments later, Wendy noticed that the Defendant's white SUV approached their BMW from behind. Defendant's white SUV pulled next to Ybarra's BMW on Kamehameha Highway and Defendant motioned for Wendy to roll down her window.

After Wendy rolled the window down, Defendant yelled, "Hey you got a fucking problem with me?" At this point, Wendy and Ybarra observed Defendant in his U.S. Department of Homeland Security uniform. Wendy replied "no" to the Defendant.

4

Defendant proceeded to ask Wendy, "You need to say something to me?" Again, Wendy replied "no."

Defendant continued to ask Wendy, "Is there something you need me to do?" Wendy responded "No, just leave us alone." Defendant, however, continued to follow Ybarra's BMW.

At a stop light on Kamehameha Highway, Ybarra stopped his vehicle to obtain Defendant's name and badge number. Ybarra walked to Defendant's white SUV and asked for his name and badge number. When Ybarra approached Defendant's window, Defendant had his gun displayed on the center part of the steering wheel.

Not noticing Defendant's gun, Ybarra asked for Defendant's name and badge number. Defendant then tapped his gun on the steering wheel, drawing Ybarra's attention to the gun. Ybarra put both hands in the air and told Defendant he was required to provide the requested information. Defendant then stuck his gun in the center of Ybarra's chest and asked if they had a problem. Ybarra responded that there was no problem and returned to his BMW with his hands still in the air. After this incident, Ybarra dialed 911 with his cellular telephone to report the incident to the Honolulu Police Department.

### III.

### ARGUMENT

"Under [Federal Rules of Criminal Procedure Rule 12(b)], an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987).

In the instant case, Defendant's Motion to Dismiss is based entirely on his asserted defense of immunity under the Supremacy Clause of the United States Constitution as he asserts that he acted within the scope of his duties as a federal protective service officer ("FPS officer") during the charged offense. *See generally* Motion to Dismiss. The Supremacy Clause provides that "[t]his Constitution, and the Laws of the United States . . . shall be the supreme law of the Land . . . , any Thing in the . . . Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

In the context of the defense being asserted here, it has been said:

> The Supremacy Clause has been held to protect federal officers from state prosecution under certain circumstances. As set forth in the seminal case of *In re Neagle*, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890): "[I]f the prisoner is held in the state court to answer for an act which he was authorized to do by the law of the United States, which it was his duty to do as marshal of the United States, and if in doing that act he did no more than what was necessary and proper for him to do, he *cannot* be guilty of a crime under . . . [state] law . . . ." *Id.* at 75, 10 S.Ct. 658. As such, the federal immunity defense ought to be decided "early in the proceedings" so as "to avoid requiring a federal officer to run the gauntlet of standing trial and having to wait until later to have the [immunity] issue decided." *Long*, 837 F.2d at 752.

6

> Indeed, by providing immunity from suit rather than a mere shield against liability, the defense of federal immunity protects federal operations from the chilling effect of state prosecution. *See Neagle,* 135 U.S. at 60-61, 10 S.Ct. 658 (observing that the United States "may, by means of physical force, exercised through its official agents, execute . . . the powers and functions that belong to it" and that the Constitution requires state law to yield to the power of the federal government); *see also Tennessee v. Davis,* 100 U.S. 257, 262-63, 25 L.Ed. 648 (1879) (noting the need to prevent states from "paralyz[ing]" operations of the federal government).

*New York v. Tanella,* 374 F.3d 141, 147 (2d Cir. 2004).

The following two-part test is from *Neagle* to determine whether or not a state court has jurisdiction to prosecute a federal agent for conduct facially violative of a state's criminal code. *Kentucky v. Long,* 837 F.2d 727, 744 (6th Cir. 1988).

> Under *Neagle,* a state court has no jurisdiction if (1) the federal agent was performing an act which he was authorized to do by the law of the United States and (2) in performing that authorized act, the federal agent did no more than what was necessary and proper for him to do.

*Kentucky,* 837 F.2d at 744.

As announced in *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 436 (1910), the purpose of the Supremacy Clause is that the federal government "cannot be made to tolerate undue interference from the states in the *enforcement of federal law.* But neither should any state be made to tolerate unwarranted interference with its duty to protect the health and welfare of its citizens." *Kentucky,* 837 F.2d at 749 (emphasis added).

7

Additionally, "while it is necessary for federal officials to be able to enforce federal laws without undue interference from the states, on the other hand the *Supremacy Clause was not intended to be a shield for 'anything goes' conduct by federal law enforcement officers*." *Kentucky*, 837 F.2d at 746 (emphasis added).

"It goes without saying, of course, that federal immunity is not absolute and does not extend to all actions of federal agents, or even to all of their actions taken during the course of their official duties." *State of Conn. v. Marra*, 528 F.Supp. 381, 385 (D.C.Conn. 1981) (citing *see Johnson v. Maryland*, 254 U.S. at 56, 41 S.Ct. at 16; *United States ex rel. Drury v. Lewis*, 200 U.S. 1, 8, 26 S.Ct. 229, 231, 50 L.Ed. 343 (1906); *Castle v. Lewis*, 254 F. 917, 926 (8th Cir. 1918)).

Cases in which immunity has been denied are those in which there is evidence of malice or evidence that the officer was not on official duty. In *United States ex rel. Drury v. Lewis*, 200 U.S. 1, 26 S.Ct. 229 (1906), the Supreme Court affirmed a trial court's denial of habeas relief to two United States Army soldiers who were indicted for homicide in a Pennsylvania state court. The Supreme Court was confronted with the question of whether Supremacy Clause immunity applies when it is unclear whether the federal officers acted reasonably.

A federal court refused to grant writ of habeas corpus to the soldiers at an early stage in the ligation. *Id.* at 6. The Supreme Court affirmed, noting that only exceptional cases warranted exercise of the exceedingly delicate jurisdiction of

federal courts to usurp state prosecutions, and that the trial court did not abuse its discretion in denying the habeas relief given the conflicting evidence about whether the killing was lawful. *Id.* at 7-8.

In *Castle v. Lewis*, federal officers shot and killed a man they suspected of illegally transporting whiskey, 254 F. at 919. In that case, there was conflicting evidence about what happened. *Id.* at 926. The variance in testimony suggested that the officers might have acted with criminal intent making them ineligible for the Supremacy Clause immunity. *Id.* at 925-26.

The Eighth Circuit also imposed a requirement that officers specifically show that a trial of their case in state court would "seriously interfere with the enforcement of the laws of the United States or the operations of its government." *Id.* at 921.

In *Birsch v. Tumbelson*, 31 F.2d 811, 812 (4th Cir. 1929), federal game wardens shot and killed two hunters. There was a discrepancy between the testimony about who fired the first shot. *Id.* at 812. Once again, the circuit court denied Supremacy Clause immunity defense because of the question of fact regarding the criminal intent of the federal wardens. *Id.* at 815-16.

In *Morgan v. California*, 743 F.2d 728 (9th Cir. 1984), two Drug Enforcement Agency ("DEA") agents, who were intoxicated at the time, backed their vehicle into a civilian's car. The DEA agents then followed the man to a

jewelry store and assaulted him and his wife. *Id.* at 730. The Ninth Circuit concluded that the trial court was correct when it denied application of the Supremacy Clause immunity because it was not clear whether the agents were engaged in official business when they committed the assault. *Id.* at 734.

The instant case presents a unique question of whether Defendant can assert Supremacy Clause immunity for actions that he denies committing in the first place. In the long line of Supremacy Clause immunity cases, the removal was predicated on the existence of a federal defense, i.e. Supremacy Clause immunity. In this case, no such defense may be available.

### A. Supremacy Clause Immunity Does Not Apply Because Defendant Is Not Authorized To Act By The Laws of the United States

To determine whether the Supremacy Clause immunity applies, the court must look to whether the federal agent's act was done pursuant to the laws of the United States and in the line of duty. The first question is whether, in viewing the disputed evidence in the light most favorable to the State, the Defendant had federal authorization for his acts on December 20, 2012. Specifically, the Court must decide whether federal law authorized Defendant to point his gun at Ybarra and threatening him.

The scope a FPS officer's official duty and accompanying law enforcement authority is set forth in 40 U.S.C. § 1315. Pursuant to that statute and interpreting

10

federal case law, the scope of a FPS officer's official duty and authority is confined to what is necessary to protect federal property or persons on federal property. *See United States v. Baldwin*, 2013 WL 1751888 (D. Colo. 2013) (affirming defendant's conviction for three petty offenses arising out of traffic stop by a FPS officer that occurred on federal property); *United States v. Farkash*, 952 F. Supp. 696 (D. Colo. 1996) (affirming defendant's conviction for threatening a FPS officer under 18 U.S.C. § 111(a) for an incident originating on federal property and finding that FPS officer did not lose his status as a federal officer because his duties required him to follow the defendant off of federal property).  There is nothing in 40 U.S.C. § 1315 that gives Defendant authority to investigate ordinary citizens for traffic violations under state law unrelated to any investigation on federal property or persons on federal property.

Although 41 U.S.C. § 1315(b)(2)(c), grants Defendant the power to arrest individuals for misdemeanors committed in his presence, there was no misdemeanor to investigate when Defendant detoured from his home-to-work commute.  According to Defendant, Ybarra merely committed a state speeding violation and directed an insult toward at him.  No misdemeanor occurred and hence Defendant had no authority under 41 U.S.C. § 1315(b)(2)(c) to act on or investigate Ybarra.

Additionally, a FPS officer's official duties off of federal property and his authority to engage in investigations are limited by FPS agency policy. FPS Directive 15.1.2.1, titled Law Enforcement Authority and Powers ("LEAP") clearly limits FPS law enforcement officers authority on non-federal state property by establishing that: "[a]s a general rule, FPS law enforcement personnel have *no legal duty or authority to enforce state or local laws* not related to the protection of federal property or persons on the property." Exhibit A, LEAP at 5, 8.2(a) (emphasis added). LEAP states three recognized exceptions. However, Defendant does not assert and his conduct fails to fall within any of the three recognized exceptions.

Further, Department of Justice through LEAP, recognizes FPS officers' limited authority on non-federal state property. Under LEAP 8.2(b), "[t]here is *no federal authority to respond to state crimes*, but officers may have authority granted by the state and in some situations even a legal obligation under state law to act in response to local criminal offenses." Exhibit A, LEAP at 5, 8.2(b) (emphasis added). Pursuant to LEAP 8.2(b), "[f]ederal law enforcement officers shall not be discouraged from intervening in local crimes of a serious nature, i.e., *felonies and violent misdemeanors*." Exhibit A, LEAP at 5, 8.2(b) (emphasis added). Further, "[e]gregious conduct by the officer or efforts to enforce a *minor*

12

*infraction* that is not a serious crime may not be within the scope of employment."
Exhibit A, LEAP at 5, 8.2(b) (emphasis added).

LEAP 8.3 recognizes that some states provide peace officer status to specific
law enforcement agencies, but nevertheless notes that actions taken under color of
state authority and for the sole benefit of the state, may be deemed outside the
scope of duty.  In the present matter, however, the State provides no such authority
to the Federal Protective Service. Instead, limited authority to arrest for violations
of specific Hawaii laws is granted to officers of the United States Customs and
Border Protection Service, Citizenship and Immigration Services, and the United
States Marshalls and their deputies.  HRS § 803-16 and 803-17 (1993 & Supp.
2012). As the Federal Protective Service is not granted authority to arrest under
Hawaii state law, the Defendant may not rely on LEAP 8.3 to justify his actions.

The general scope of Defendant's FPS duties is limited by federal statute
and FPS policy to what is necessary to protect federal property or persons on
federal property.  There is nothing in federal law or FPS policy that gives
Defendant any authority to enforce State of Hawaii statutes, or City and County of
Honolulu traffic laws.

When Defendant re-entered the freeway and engaged Ybarra he was not
authorized under federal law or FPS policy to act and he was not seeking to

enforce any federal law.  FPS LEAP policy specifically states that Defendant has no legal duty or authorization to enforce state or local laws.

Although still in dispute, what Defendant claims to have witnessed was a violation of HRS § 291C-50, a traffic violation.  This minor traffic violation does not rise to the level of a felony or violent misdemeanor giving rise to the need for Defendant to intervene.

Furthermore, by Defendant's own admission, the purpose of getting back on the freeway and following Ybarra was to obtain Ybarra's registration information and report the incident to Ybarra's chain of command.  This is not even remotely related to federal procedure or within the scope of Defendant's FPS official duties or authority.  There is nothing in federal law or FPS policy allowing Defendant to detour from his FPS home-to-work transport for his stated purpose.  Defendant's stated purpose and intent removes his actions from the realm of enforcement of federal law or policy, and constitutes a direct violation of FPS home-to-work transport policy.  Defendant's authority to act is limited by federal law and FPS policy.

Defendant further claims to have observed a violation of 18 U.S.C. § 111(b)'s prohibition against assaulting, intimidating or interfering with a federal officer.  The test under 18 U.S.C. §111 of whether the agent is engaged in the performance of their duties is whether the federal agent is acting within the scope

14

of what the agent is employed to do or instead is engaged in personal frolic or detour. *United States v. Hoffer*, 869 F.2d 123, 125-6 (9th Cir. 1989); *United States v. Schweitzer*, 35 Fed. Appx. 331, 332 (9th Cir. 2002).

Once Defendant detoured from his home-to-work route and reentered the freeway to follow Ybarra, he was not acting within the scope of his employment, but instead engaged in personal frolic or detour. At the moment Defendant detoured from his federal authorized home-to-work transport, there was no violation of 18 U.S.C. § 111. When Defendant reentered freeway he did not have reasonable suspicion for a violation of 18 USC § 111 and his actions were outside the scope of what he is employed to do as a FPS officer. The court has even recognized that the alleged violation of 18 U.S.C. § 111 occurred when Ybarra approached Defendant's parked car near the gate entrance. *See* Order Denying Plaintiff's Motion for Remand to State Court (ECF No. 4). Therefore, when Defendant detoured from his home-to-work transport he was outside the scope of his federal authority and was not engaged in the performance of a federal duty.

By Defendant's own admission, his actions were not pursuant to the enforcement of any federal law. Additionally, Defendant was not authorized to detour from home-to-work transport by federal law or FPS policy. As Defendant was not authorized by federal law in his actions, his conduct is not protected by the Supremacy Clause.

Furthermore, Defendant fails to establish that his act of threatening Ybarra with a gun, was done pursuant to any federal law and in the line of federal duty. Although Defendant claims that he was "in service" and authorized to arrest Ybarra for the alleged violation of 18 U.S.C. § 111, the enumerated powers under 40 U.S.C. § 1315, and FPS policy make it clear that Defendant's official federal duties did not authorize him to activate his emergency lights, investigate Ybarra for an incident that did not originate on federal property, or point a gun at Ybarra's chest. Hence, Defendant fails to establish the first element necessary for immunity under the Supremacy Clause.

### B.   Defendant Did Not Believe That His Actions Were Necessary And Proper To Fulfilling His Federal Duties

Even assuming *arguendo*, that Defendant's actions were authorized by federal law and in the line of his federal duties, his actions fails to meet the second *Neagle* criteria, the necessary and proper standard. The circuit courts have had varying interpretations about the standard to use, with regards on the necessary and proper analysis.

In *Clifton v. Cox*, 549 F.2d 722, 724 (9th Cir. 1977), the Ninth Circuit considered whether a special agent for the Bureau of Narcotics and Dangerous Drugs was entitled to Supremacy Clause immunity for a killing that occurred during a drug raid. After determining that the federal agent's actions where within

the scope of his authority, the court went on to consider whether the agent's conduct was necessary and proper under the circumstances. *Id.* at 728.

The Ninth Circuit incorporated a subjective element into the necessary and proper analysis. The Ninth Circuit held that the determination of whether a federal officer's conduct was necessary and proper requires the petitioner to show that he had an honest and reasonable belief that what he did was necessary in the performance of his duty. *Id.* at 729. However, a federal employee will be stripped of Supremacy Clause immunity if it is shown that the employee employed means which he cannot honestly consider reasonable in discharging his duties or that the act was made out of malice or with criminal intent. *Id.* at 728.

The Sixth Circuit, in *Kentucky v. Long*, 837 F.2d 727 (6th Cir. 1988), cited *Clifton*, and incorporated the *Clifton* subjective element, which requires the agent "to have an honest belief that his action was justified." *Id.* at 745.

The Second Circuit, has adopted a similar approach in *New York v. Tanella*, 374 F.3d 141, 147 (2nd Cir. 2004), that to meet the necessary and proper standard two conditions must be satisfied whereby the agent must have a subjective belief that his conduct was justified and that the belief must be objectively reasonable.

The Tenth Circuit, in *Wyoming v. Livingston*, 443 F.3d 1211, 1221-1222, 36 Envtl. L. Rep. 20071, 53 A.L.R. Fed 2d 643 (10th Cir. 2006), expressed concern with the incorporation of a subjective element into the reasonableness of a federal

17

officer's action—an element not present in the Supreme Court's decisions—the court instead applying an objective standard and specifically declining to rule on whether subjective reasonableness is a necessary consideration in Supremacy Clause immunity cases.

Most recently en banc Ninth Circuit in *Idaho v. Horiuchi*, 253 F.3d 359 (9th Cir. 2001) *vacated as moot*, 266 F.3d 979 (9th Cir. 2001), questioned whether inclusion of a subjective component was appropriate in light of the Supreme Court's decision in *Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S.Ct. 2727 (1982), a case where the Supreme Court held that qualified immunity should depend on whether the official acted in an objectively reasonable manner, without reference to subjective intentions.

The issue is whether Defendant had an honest and reasonable belief that his actions were justified. In this case and other cases involving Supremacy Clause immunity, the questions of fact go directly to what the defendant did and to whether the defendant honestly and reasonably believed that his actions were justified. Under the necessary and proper standard, Defendant must show that his act of threatening Ybarra with his gun was something that he reasonably thought was necessary in performance of his duties.

Defendant fails to raise a claim of federal Supremacy Clause immunity but rather raise an issue of witness credibility. Defendant represents that the conduct

forming the basis of the State of Hawaii's Terroristic Threatening in the First Degree charge *never* occurred. In other words, there is no federal question at issue in this State of Hawai'i prosecution because Defendant denies the existence of the very facts that his reliance on the Supremacy Clause is based on. "While this assertion may well serve as a defense to the state prosecution, it does not establish the basis of a claim of federal immunity." *North Carolina v. Ivory*, 906 F.2d 999, 1002 ((4th Cir. 1990) (holding that the defendant had not alleged a defense of federal immunity because he had not alleged anything in the conduct of his federal responsibilities which justified his violation of local traffic laws).

The facts that constitute the State of Hawaii's Terroristic Threatening in the First Degree charge are that Defendant pointed his gun at Ybarra's chest and asked if they had a problem. Defendant flatly denies Ybarra's version of what occurred. Defendant's defense is that Ybarra's report of what occurred *never happened* because, according to Defendant he *never* raised his weapon and certainly did not point it at any part of Ybarra's body.

Defendant fails to establish how the conduct charged was necessary and proper under his federal duties to give rise to Supremacy Clause immunity because he denies altogether that the alleged conduct occurred. Hence, since Defendant did not assert that the charged act was justified under the federal laws authorizing his

duties, the issue of necessary and proper analysis cannot be in dispute. Instead, what Defendant disputes is Ybarra's credibility.

Defendant states that his actions were necessary and proper to fulfillment of his duties. However, Defendant's version of the fact-that he removed his firearm and placed it on his lap in a tactical ready position is not the basis for the State's criminal prosecution. The State charged the Defendant based on the factual allegation that he pointed his gun at Ybarra and threatened him. The disparity between these factual scenarios is a matter for the trier of fact to resolve at trial.

Defendant claims that he is entitled to protection by Supremacy Immunity but at the same time claims that the charged conduct never occurred. Defendant is not asserting that even if he did point his gun at Ybarra, he did so within the course of his federal duties. Defendant is not asserting that when he pointed his gun at Ybarra, his belief was mistaken or his judgment was poor but that he did so within the course of his federal duties. Defendant does not claim that he honestly and reasonably believed that it was necessary and proper to point his FPS issued firearm at Ybarra or that in hindsight it was an error in judgment. Admission to any of the foregoing would trigger Supremacy Clause immunity analysis. On the contrary, Defendant's improper claim of Supremacy Clause immunity is based on denial of committing the action that is the basis of the State of Hawaii's Terroristic Threatening in the First Degree charge.

Under the necessary and proper standard, Defendant has failed to establish under either the subjective or objective standard that his actions were reasonable at the time of the offense based upon the existing circumstances. Defendant, therefore, fails to properly establish a claim of Supremacy Clause immunity. Defendant's defense is not that he honestly and reasonably believed that pointing his gun at Ybarra was necessary and proper under the circumstances but rather that it never happened. Defendant also does not assert that his actions were objectively reasonable. If that was what Defendant was asserting, then the analysis for Supremacy Clause immunity could proceed.

Supremacy Clause immunity is not meant to insulate federal officers from acts that they deny committing, but to protect them from acts committed within the official course of their duties. Defendant does not cite or identify any authority where the Supremacy Clause immunity is implicated by the defense of witness credibility, reasonable doubt, and denial of committing the offense. Defendant does not defend his allegedly criminal conduct by relying on federal law or a federal defense, he claims it never happened. Supremacy Clause immunity can not be granted for actions that never happened.

Defendant was outside his authority granted by federal law and should have called the Honolulu Police Department if there was any violation of State of Hawaii traffic laws. Further, Defendant should not have continued to engage

21

Ybarra by following him.  There is nothing reasonable about threatening an unarmed person with a gun in response to civilian requests a law enforcement officer's name and badge number.  By detouring from FPS home-to-work transport policies, following Ybarra, and threatening him with a gun, Defendant's actions were unreasonable.

The question for purposes of Supremacy Clause immunity is not whether Defendant is guilty under state law, but whether he has established immunity under federal law.  Defendant fails to establish a proper federal Supremacy Clause immunity because he has failed to show any authorization under federal law and denies that that it was his belief that the act of pointing his gun at Ybarra was necessary and proper in his federal duties.   Therefore, Defendant's actions cannot be justified under federal Supremacy Clause immunity.

The allegation that are the basis of Defendant's prosecution is not on his admitted action of removing his firearm, but the act of threatening Ybarra with his firearm by pointing it to Ybarra's chest.  Nothing in the record indicates that Defendant had to act this way to perform any of his duties assigned to him by federal law.  Even if Defendant were to admit to the actions that are the basis of the state charge, he fails to justify how in the performance of his official duties threatening Ybarra with his gun, brings this case under Supremacy Clause immunity.

The granting of immunity in this case would serve the opposite purpose of which Supremacy Clause immunity was developed.  There is no federal duty that Defendant was attempting to fulfill through his continued engagement of Ybarra and threatening of Ybarra with his gun.  Conversely, this case represents the other side of Supremacy Clause immunity that represents an interference with the State of Hawaii's ability to enforce the state traffic laws and its duty to protect the health and welfare of its citizens.  As Defendant was not enforcing any federal laws by threatening Ybarra with his gun, the granting of Supremacy Clause immunity would be used as a shield for "anything goes" conduct by a FPS officer.

### C.  Granting of Defendant's Motion to Dismiss is Improper Because of the Numerous Factual Issues in Dispute

When a federal officer seeks to use the Supremacy Clause immunity he must first establish a threshold defense of immunity. *Kentucky,* 837 F.2d at 857.  Then the burden shifts to the prosecution to produce evidence "sufficient at least to raise a genuine factual issue whether the federal officer was . . . doing no more than what was necessary and proper for him to do in the performance of his duties." *Id.* at 857.  A grant of a writ of habeas corpus prior to a state criminal trial is inappropriate when there are material factual disputes over the claim of Supremacy Clause immunity. *Morgan,* F.2d at 732.

23

Defendant has failed to adequately raise a proper Supremacy Clause immunity defense, therefore, the burden does not shift to State of Hawaii to raise genuine factual issues.  Even assuming *arguendo*, that Defendant did have an adequate Supremacy Clause immunity defense, there are numerous genuine factual issues of whether Defendant was acting pursuant to the laws of the United States and was doing no more than what was necessary and proper for him to do in the performance of his duties.

Although Defendant failed to first establish a threshold defense of Supremacy Clause immunity, even assuming he did, there is a substantial conflict in the evidence about material facts related to Defendant's claim that he was authorized by federal law and that what he did what was necessary and proper.

The material facts in dispute are: (1) Ybarra's approach of Defendant's vehicle on the freeway; (2) Ybarra's gesturing toward Defendant as he exited the freeway; (3) Defendant's authority to detour from home-to-work transport; (4) time sequence when Defendant pulled his car next to Ybarra's car; (5) location that Ybarra stopped his vehicle; (6) position of Defendant's gun; (7) demeanor of Ybarra as he approached Defendant's vehicle and manner of speaking to Defendant; (8) Defendant threatening Ybarra with his gun; (9) sequence of events after Ybarra got into his car.

Even if Defendant admitted to the charged conduct, the State asserts that there would still be genuine issues fact as to whether Defendant was objectively justified in his belief that it was necessary to point his gun at unarmed Ybarra.

Accordingly, for all of the foregoing reasons, the State respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss.

Dated at Honolulu, Hawai'i:   October 11, 2013.

By  /s/ Elena Kaui Yamane
ELENA KAU'I YAMANE
Deputy Prosecuting Attorney
City and County of Honolulu