Law Offices Of:
HARRISON & MATSUOKA

WILLIAM A. HARRISON    #2948
841 Bishop Street, Suite 800
Davies Pacific Center
Honolulu, Hawaii  96813
Telephone Number:   523-7041
Facsimile Number:  538-7579
E-Mail:  wharrison@hamlaw.net

Attorney for Defendant
CHARLES ERIC BROUGHTON

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STATE OF HAWAI'I, | CR. NO. 13-00415 HG |
| Plaintiff, | **REPLY TO STATE OF HAWAII'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS;** |
| vs. | **CERTIFICATE OF SERVICE** |
| CHARLES ERIC BROUGHTON, Also known as Eric Broughton, | |
| Defendant. | |

### REPLY TO STATE OF HAWAII'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Commander Charles Eric Broughton ["Commander Broughton; Broughton"], by and through counsel undersigned hereby submits his reply to the State of Hawaii's opposition to defendant's motion to dismiss.

## I.  COMMANDER BROUGHTON WAS AUTHORIZED BY THE LAWS OF THE UNITED STATES TO INVESTIGATE THE ACTIVITY OF MARIO YBARRA

When Commander Broughton was driving along H-2 on Oahu, Hawaii, Ybarra's vehicle began dangerously tailgating him while traveling at a high rate of speed. Commander Broughton turned on his rear emergency lights in an effort to warn Ybarra. As Commander Broughton was exiting the freeway Mr. Ybarra pulled alongside Commander Broughton and leaned over the passenger side of his vehicle and "began violently displaying his middle finger" and yelling.  Due to the location of the altercation on H-2, Commander Broughton suspected that Ybarra was a military member and he assumed that Ybarra was heading to the Army installation located off of H-2. Commander Broughton decided to report Ybarra's behavior to his military commander.

While Commander Broughton's immediate concern was for the safety of Ybarra, his passenger and other drivers, Ybarra's tailgating of Commander Broughton's marked Chevrolet Tahoe and aggressive hand gestures while driving alongside Commander Broughton on the freeway reasonably constituted a violation of the 18 U.S.C. § 111 (b)'s prohibition against assaulting, intimidating or interfering with a federal officer.

Commander Broughton followed Ybarra to obtain his license plate and registered owner information from FPS dispatch.  Thereafter, Ybarra abruptly

2

stopped in the middle of traffic lane and proceeded to leave his vehicle and approach Commander Broughton's driver side window, while yelling at him. When Commander Broughton saw Ybarra approaching the vehicle, fearing that Ybarra may have been armed Broughton removed his service weapon from its holster and placed it above his lap, in a tactical ready position. Commander Broughton stated that he returned the weapon to its holster once he determined that Ybarra was unarmed.

Ybarra alleges that Commander Broughton placed his service weapon on his chest and asked Ybarra "if he had a problem." Ybarra claims that at that point he raised his arms, went back to his car, and departed the area. On the contrary, Commander Broughton adamantly denies that he raised his weapon and certainly did not point it at any part of Ybarra's body.

Commander Broughton believed that there was reasonable suspicion to make a traffic stop based on Ybarra's driving and behavior. Notwithstanding his right to do so Broughton *did not stop Ybarra*. He merely sought to obtain information to report to Ybarra's command.

However, after Commander Broughton began his investigation noted above, Ybarra's actions constituted an additional violation of 18 U.S.C. 111. 18 U.S.C. 111 provides:

> Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the

3

> performance of official duties shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both . . . .

18 U.S.C. § 111(a) (1).

When Ybarra approached Commander Broughton's parked car near the gate entrance, Ybarra violated 18 U.S.C. § 111 because Ybarra attempted to intimidate Broughton and interfere with Broughton's investigation while he was acting in performance of his official duties. Commander Broughton's actions when Ybarra approached were within the scope of his enumerated police powers. An FPS law enforcement officer has the power to make arrests without warrant for misdemeanors committed in their presence and felonies based on probable cause. *See* 40 U.S.C. § 1315 (b) (2) (c).

## II.    BROUGHTON'S ACTIONS WERE NECESSARY AND PROPER

The Supremacy Clause provides broad protection against a state prosecution as long as the federal officer reasonably believed the conduct at issue was necessary and proper to the performance of his federal duties. *In re Neagle,* 135 U.S. 1 (1890). *See also Clifton v. Cox,* 549 F.2d 722 (9th Cir. 1977.

The *Neagle* inquiry: whether the federal agent's actions were no more than "necessary and proper" to carry out his duty, is met by satisfying two conditions: (1) the actor must subjectively believe his action was justified; and

4

(2) his belief must be objectively reasonable.[1] *Whitehead v. Senkowski,* 943 F.2d 230, 234 (2nd Cir. 1991); *see also Long,* 837 F.2d at 745 ("On the subjective side, the agent must have an honest belief that his action was justified. On the objective side, his belief must be reasonable"). A defendant, however, need not "show that his action was in fact necessary or in retrospect justifiable, only that he reasonably thought it to be." *Clifton v. Cox,* 549 F.2d 722, 728 (9th Cir. 1977). As a result, this Court must view the circumstances as they appeared to Commander Broughton at the time of the incident. *See id.* at 728-29; *Graham v. Connor,* 490 U.S. 386, 396-97, 109 S. Ct. 1865, 104 L.Ed. 443 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . allowing for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving. . . ."); *United States v. Lipsett,* 156 F. 65, 71 (W.D. Mich. 1907) (federal officer is "not liable to prosecution in the state court from the fact that from misinformation or lack of good judgment he transcended his authority").

---

[1] The Ninth Circuit has questioned, but left unresolved, whether inclusion of a subjective component is appropriate in light of the Supreme Court's decision in *Harlow v. Fitzgerald,* 457 U.S. 800, 817-18 (1982), which held that qualified immunity should depend on whether the official acted in an objectively reasonable manner, without reference to subjective intentions. *Idaho v. Horiuchi*, 253 F.3d 359, 366 n.11 (9th Cir. 2001) *(en Banc), vacated as moot, 979(9th Cir.2001) (en banc.)*

Errors in judgment in what a federal officer conceives to be his legal duty will not, alone, serve to create criminal responsibility. *In re Fair,* 100 F. 149 (D. Neb. 1900) (soldiers shoot escapee based on questionable orders); *In re Lewis,* 83 F. 159 (D. Wash. 1897) (U.S. Treasury employees who wrongfully seized papers granted writ of habeas corpus). A federal officer exceeding his express authority does not necessarily strip himself of his lawful power to act under the scope of authority given to him under the laws of the United States. *Clifton v. Cox,* 549 F.2d at 728. The standard by which the act committed by a federal officer will be measured considers the reasonableness and integrity of his actions in light of the circumstances as they appeared to him when he acted. *In Re McShane's Petition,* 235 F. Supp. at 273. A federal officer is entitled to release if the evidence reveals he had a reasonable belief under the circumstances that his actions were necessary at that time. *See, e.q., United States ex rel. McSweeney v. Fullhart,* 47 F. 802 (W.D. Pa. 1891) ("did he do more than was necessary and proper for him to do under the circumstances? This must be decided by under all the circumstances, and keeping in mind the situation of the deputies when compelled to decide upon a course of action"); *In re Lewis,* 83 F. 159 (D. Wash. 1897) ("all they did was in an official capacity, without any private or individual malice, and without any felonious intent to commit a robbery or to do a criminal act."); *In re Neagle,* 135 U.S. at 75-76 ("that in taking the life of Terry, under the circumstances, he was acting under

6

the authority of the law of the United states, and was justified in so doing; and he is not liable to answer in the courts of California on account of his part in that transaction").

Commander Broughton subjectively believed that he was justified in his initial investigation of Ybarra due to his reckless high speed, dangerous tailgating and irrational behavior. Objectively, Commander Broughton's follow-up investigation which led to the confrontation was justified based on his observation of Ybarra abruptly stopping in the middle of a traffic lane and proceeded to leave his vehicle and approach Commander Broughton's driver side window, with pre-assault indicators, while yelling at Broughton.

### III. A PRETRIAL DETERMINATION OF THE FACTUAL ISSUES IN THIS CASE IS PROPER

The fact that there are factual issues in dispute in this matter does not remove this matter from a determination of the court. The court is invariably called upon to render factual determinations in virtually all motion to dismiss. Supremacy clause motions are no different than any other motion to dismiss in this regard. Indeed the most recent pronouncement on this issue by our circuit court, so held. In *Idaho v. Fitzgerald*[2] the court stated:

> The only case to speak directly to this issue comes from the early part of the last century. In *West Virginia v. Laing,* 133 F. 887, 891 (4th Cir.1904), the court concluded that "Congress certainly intended, in cases of this

---

[2] 253 F.3d 359 (9th Cir. 2001) vacated as moot, 266 F.3d 979 (9th Cir. 2001).

7

character, that the judges of the United States should hear the evidence, and without a jury proceed in a summary way to pass upon the federal question involved." *But cf. United States v. Lipsett,* 156 F. 65, 71 (W.D.Mich.1907) (suggesting that had there been facts in dispute, the court would let the state jury decide them).[26]

We also find persuasive modern courts' practice of deciding factual questions underlying criminal immunity claims, rather than submitting them to juries. Having to live through the anxiety of a criminal trial destroys most of the benefits of immunity, and so courts often dispose of factual questions underlying immunity defenses prior to allowing the jury to deliberate on criminal liability. We have recognized that courts may decide the facts underlying a double jeopardy claim or the scope of an immunity deal with the prosecution. *See, e.g., United States v. Mendoza,* 78 F.3d 460, 464–65 (9th Cir.1996) (immunity deal); *United States v. Gutierrez–Zamarano,* 23 F.3d 235, 237 (9th Cir.1994) (double jeopardy). A defendant, such as Oliver North, who was given a grant of immunity, is entitled to a *Kastigar* hearing, where the district court makes determinations about whether the government has made its case based on immunized testimony. *See Kastigar v. United States,* 406 U.S. 441, 461, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *United States v. North,* 920 F.2d 940, 941–42 (D.C.Cir.1990) (per curiam). And, of course, courts routinely decide any factual disputes underlying attorney-client privilege, executive privilege, probable cause and other evidentiary matters.

*Idaho v. Horiuchi*, at 374-375 [footnotes omitted].

The State and defense have differing views as to the evidence in this case. Those difference are to be reviewed and the court is ultimately required to decide those differences and find the facts. That is the duty of the court – to make factual findings and decide federal questions.

As the court in *Horiuchi* opined and the Commander Broughton also

8

believe[s] [that] interposing a federal judge between the state prosecutor and the jury will provide a significant restraint on overzealous state prosecutors and ensure such prosecutions remain an avenue of last resort in our federal system." *Horiuchi* at 376.

### IV. <u>CONCLUSION</u>

The evidence establishes that Commander Broughton is a federal employee of the department of Homeland Security, and was, at the time of the events alleged in the Complaint, a law enforcement officer of the United States for purposes of 28 U.S.C. § 1442(a)(1). The evidence will establish that there was a causal nexus between his actions and the charge against him. The evidence will further establish that his conduct in investigating Ybarra, was "necessary and proper" under the circumstances as perceived by Broughton. *Clifton v. Cox,* 549 F.2d 722, 728 (9th Cir. 1977). Additionally, the evidence will establish that Broughton subjectively believed his action was justified and his belief was objectively reasonable. *Whitehead v. Senkowski,* 943 F.2d at 234.

Therefore, the criminal prosecution should be dismissed given that Commander Broughton's actions were no more than necessary and proper under the circumstances. *In re Neagle,* 135 U.S. 1 (1890).

DATED: Honolulu, Hawaii, October 17, 2013.

/s/   William A. Harrison
WILLIAM A. HARRISON

9